(No. 79423.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lee, v. JAMES TENNER, Appellant.

*Opinion filed January 30, 1997.—Rehearing denied*
*March 31, 1997.*

Joshua Sachs, of Sachs & Drake, and Raymond D. Pijon, all of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee Goldfarb and Judy L. DeAngelis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

The defendant, James Tenner, brings this appeal from an order of the circuit court of Cook County dismissing his post-conviction petition without an evidentiary hearing. Because the defendant received the death penalty for the underlying first-degree murder convictions, the present appeal lies directly to this court. 134 Ill. 2d R. 651(a).

The circumstances of the defendant's offenses are fully set forth in our opinion on direct appeal and require only brief restatement here. The offenses in question occurred in South Chicago Heights on September 2, 1987, when the defendant shot and killed two persons and injured a third. The defendant had been acquainted with two of the victims, Albert and Donna Saüls, for a lengthy period; the third victim, Alvin Smith, was employed by Albert Sauls. The offenses occurred in a garage where the defendant rented space. Testimony was received at trial from both Albert Sauls, who survived the attack, and Shirley Garza, who was the defendant's former girlfriend and who was present during the offenses. According to the trial testimony, the Saulses' and Smith's hands and feet were first bound, and the three victims were then ordered by the defendant to proceed to an area where three nooses were hanging from the rafters. After placing the victims in the nooses, the defendant proceeded to harangue them for several hours, complaining that they had interfered in his relationship with Garza, his former girlfriend. The defendant later shot the Saulses and Smith with a

shotgun, killing Donna Sauls and Smith. The defendant then left the premises with Garza, and was apprehended later that night. In his own testimony at trial, the defendant explained that he believed that the Saulses had previously abducted Garza, and that they were plotting to kill him.

The jury found the defendant guilty of two counts of first degree murder, one count of attempted first degree murder, four counts of aggravated unlawful restraint, and one count of armed violence. After a capital sentencing hearing before the same jury, the defendant was sentenced to death for his convictions for first degree murder. On direct appeal, this court vacated the defendant's conviction for attempted first degree murder but otherwise affirmed the remaining convictions and corresponding sentences. *People v. Tenner*, 157 Ill. 2d 341 (1993). The United States Supreme Court denied the defendant's petition for a writ of *certiorari*. *Tenner v. Illinois*, 512 U.S. 1246, 129 L. Ed. 2d 882, 114 S. Ct. 2768 (1994). In December 1994 the defendant instituted the present action in the circuit court of Cook County, seeking post-conviction relief. The defendant submitted a supplemental petition in March 1995. The circuit judge dismissed the defendant's petitions without an evidentiary hearing. Because the death penalty was imposed for the underlying first-degree murder convictions, the defendant's appeal from the dismissal of his post-conviction petition lies directly to this court. 134 Ill. 2d R. 651(a).

The Post-Conviction Hearing Act (725 ILCS 5/122—1 through 122—7 (West 1994)) enables a defendant to challenge a conviction or sentence for violations of federal or state constitutional rights. *People v. Thompkins*, 161 Ill. 2d 148, 157 (1994). An action for post-conviction relief is a collateral proceeding, not an appeal from the underlying judgment. *People v. Brisbon*, 164 Ill. 2d 236,

242 (1995); *People v. Free*, 122 Ill. 2d 367, 377 (1988). To be entitled to post-conviction relief, a defendant must establish a substantial deprivation of federal or state constitutional rights in the proceedings that produced the judgment being challenged. 725 ILCS 5/122—1 (West 1994); *People v. Guest*, 166 Ill. 2d 381, 389 (1995). Considerations of *res judicata* and waiver limit the range of issues available to a post-conviction petitioner "to constitutional matters which have not been, and could not have been, previously adjudicated." *People v. Winsett*, 153 Ill. 2d 335, 346 (1992). Thus, rulings on issues that were previously raised at trial or on direct appeal are *res judicata*, and issues that could have been raised in the earlier proceedings, but were not, will be deemed waived. *People v. Coleman*, 168 Ill. 2d 509, 522 (1995); *People v. Silagy*, 116 Ill. 2d 357, 365 (1987).

I

The defendant raises a number of contentions here in opposition to the trial court's decision to dismiss the amended post-conviction petition without an evidentiary hearing. The defendant's principal arguments on appeal concern the conduct of trial and appellate counsel, and the defendant alleges that the attorneys rendered constitutionally ineffective assistance in a number of respects. Although the defendant focuses on the conduct of trial counsel, he makes the allied claims that his attorney on direct appeal was ineffective for failing to raise claims of trial counsel's incompetence that were available at that time. Because these issues overlap, we will address the challenges to appellate counsel's competence at the same time as we consider the arguments pertaining to trial counsel. See *People v. Guest*, 166 Ill. 2d 381, 390 (1995). We note that the same standards govern our assessment of the performance of trial and appellate counsel here. *People v. Whitehead*, 169 Ill. 2d 355, 381 (1996); *People v. Johnson*, 154 Ill. 2d 227, 233-34 (1993).

# A

The defendant first argues that trial counsel was ineffective for failing to have the defendant undergo an evaluation of his mental condition prior to trial and sentencing. The defendant contends that a mental evaluation could have provided the basis for an insanity defense at trial and could have supplied important mitigating evidence at the capital sentencing hearing. In support of this contention, the defendant included with his original and supplemental post-conviction petitions two reports by Dr. Lyle Rossiter, a psychiatrist. Dr. Rossiter prepared a preliminary report after reviewing the trial transcript and other materials supplied by post-conviction counsel. After interviewing the defendant on January 10, 1995, Dr. Rossiter submitted a supplemental report, which incorporated the impressions he gleaned on that occasion. In the supplemental report, Dr. Rossiter expressed the view that the defendant "was in a highly irrational state caused by a paranoid delusional disorder" at the time of the offenses committed here. Dr. Rossiter believed that the defendant's condition warranted a psychiatric examination to determine whether he was insane or was suffering from extreme mental or emotional distress.

The constitutional guarantee of the assistance of counsel (U.S. Const., amends. VI, XIV) includes the right to the effective assistance of counsel (*Cuyler v. Sullivan*, 446 U.S. 335, 344, 64 L. Ed. 2d 333, 343-44, 100 S. Ct. 1708, 1716 (1980)), both at trial and on a defendant's first appeal as of right (*Evitts v. Lucey*, 469 U.S. 387, 396-97, 83 L. Ed. 2d 821, 830-31, 105 S. Ct. 830, 836-37 (1985)). The relevant standard for gauging the performance of counsel is provided by *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must establish both that counsel's performance was deficient and that he was prejudiced as a

result of counsel's alleged deficiency. *Strickland,* 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

(1)

The defendant initially argues that trial counsel was ineffective for failing to have the defendant undergo a mental evaluation prior to trial. The defendant believes that an examination could have revealed evidence that would have supported an insanity defense to the charges.

This is not a case in which counsel wholly failed to investigate the defendant's background prior to trial or sentencing. Here, defense counsel retained a mitigation expert, who conducted an investigation into the defendant's personal history, though counsel later decided not to call that person as a witness either at trial or at sentencing. Nothing in the record at that time, however, suggested that the defendant suffered from any mental impairment, or that there was any need to pursue a separate inquiry into the defendant's mental condition. "Where the circumstances known to counsel at the time of his investigation do not reveal a sound basis for further inquiry in a particular area, it is not ineffective for the attorney to forgo additional investigation. [Citation.]" *People v. Holman,* 164 Ill. 2d 356, 371 (1995).

We believe that trial counsel's failure to have the defendant undergo a mental evaluation was a strategic choice made after sufficient investigation. In *Strickland* the Supreme Court observed:

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a

particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 690-91, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.

Nothing in the defendant's record or personal history disclosed any history of mental illness or emotional disturbance; there was nothing to prompt a separate inquiry into the defendant's mental condition. In rejecting this portion of the defendant's post-conviction petition, the judge below, who had also presided at trial, explained:

"There was nothing to suggest a psychiatric exam in this young Defendant's background. If there had been anything that would have suggested [a] psychiatric exam, I probably would have ordered it *sua sponte*. I've been known to do that to satisfy myself as to the mental competency of a defendant in front of the bench. There's none of that in this record."

Like the judge below, we do not believe that counsel acted unreasonably in failing to obtain a mental evaluation of the defendant prior to trial.

Even if we assume that counsel was deficient for not obtaining an expert evaluation of the defendant's mental condition, we do not believe that the defendant incurred any prejudice at trial as a result of the claimed error. As we have noted, a defendant complaining of ineffective assistance of counsel must establish both a deficiency in counsel's performance and prejudice resulting from the deficiency. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

The defendant does not claim that he was insane at the time of the offenses involved in this case, and the

defendant has failed to show that a mental evaluation would have revealed evidence that could have resulted in his acquittal on grounds of insanity. Notably, Dr. Rossiter did not find that the defendant was insane when he committed the present offenses. Although Dr. Rossiter believed that the defendant was delusional at the relevant time, Dr. Rossiter did not conclude that the defendant was insane. The evidence presented by the defendant in support of the present claim falls far short of what is needed to establish an insanity defense.

(2)

The defendant makes the related argument that counsel rendered ineffective assistance at his capital sentencing hearing when his attorneys failed to obtain a mental evaluation of the defendant and offer the evidence in mitigation. The defendant correctly notes that extreme mental or emotional disturbance is included as a mitigating circumstance in the Illinois death penalty statute. Ill. Rev. Stat. 1987, ch. 38, par. 9—1(c)(2).

We do not believe that counsel's failure to make this inquiry in preparation for the sentencing hearing constituted ineffective assistance. As we have already noted, there was nothing in the defendant's record or personal history at that time to prompt counsel to seek an examination of the type the defendant now proposes. Moreover, we note the potentially ambiguous nature of evidence of mental problems: as we have observed in other cases, information about a defendant's mental or psychological impairment is not inherently mitigating. *People v. Sanchez*, 169 Ill. 2d 472, 491-92 (1996). At sentencing, a judge or jury considering evidence of this nature might view the information as either mitigating or aggravating, depending, of course, on whether the individual hearing the evidence finds that it evokes compassion or demonstrates possible future dangerousness. *People v. Foster*, 168 Ill. 2d 465, 491 (1995); *People*

*v. Mahaffey*, 165 Ill. 2d 445, 467-68 (1995); *People v. Jones*, 144 Ill. 2d 242, 272-73 (1991).

Further supporting our conclusion that counsel was not deficient is the conflict that this evidence could have created with the defendant's trial testimony, in which the defendant attempted to establish that he was guilty only of second degree murder, a noncapital offense. See *People v. Holman*, 164 Ill. 2d 356, 373 (1995); *People v. Kokoraleis*, 159 Ill. 2d 325, 330-31 (1994). Testimony given by a defendant at trial can profoundly influence the range of strategic options available to counsel at a subsequent sentencing hearing. In the present case, the defendant testified at trial that he prepared the ropes used to bind the victims and that he fired the shots that killed two of the victims and injured a third. The defendant sought to explain these actions by attributing his conduct to passion and emotion.

Consistent with the defendant's trial testimony, counsel's strategy at the sentencing hearing was to demonstrate that the present crimes were anomalous events in the defendant's life. In closing argument at the second stage of the sentencing hearing, counsel argued that the defendant would not pose a threat to others if he received a sentence of life imprisonment, which in this case was the only alternative to the death sentence. Defense counsel continued with this theme by characterizing the offenses as products of passion and emotion, unlikely to be repeated in the future. Counsel noted further that the defendant had previously led a peaceful, law-abiding life. In addition, counsel emphasized the defendant's ambition, his exemplary work history, and his devotion to family members and friends.

In sum, defense counsel, after sufficient investigation, employed a coherent strategy at the sentencing hearing, and we do not believe that counsel was ineffective in failing to take the course now suggested by the

defendant. Unlike post-conviction cases raising similar allegations of incompetence in which this court has found an evidentiary hearing or a new sentencing hearing to be warranted (see *People v. Orange*, 168 Ill. 2d 138 (1995); *People v. Thompkins*, 161 Ill. 2d 148 (1994); *People v. Perez*, 148 Ill. 2d 168 (1992)), there did not exist in this case a substantial amount of mitigation that counsel ignored or inexplicably failed to introduce. Even if we assume that the performance of the defendant's trial attorneys was deficient in this regard, however, we do not believe that the defendant suffered any prejudice as a consequence. Assessing potential prejudice of an asserted deficiency in counsel's performance at a capital sentencing hearing requires that we examine the effect of counsel's conduct on the sentencer's decision. *People v. Sanchez*, 169 Ill. 2d 472, 491 (1996); *People v. Ashford*, 168 Ill. 2d 494, 505 (1995); *People v. Coleman*, 168 Ill. 2d 509, 536 (1995). The relevant question here is "whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2069.

With these considerations in mind, we do not believe that the present defendant was prejudiced by his trial attorneys' failure to obtain and introduce evidence of this nature. Although the jury heard substantial evidence in mitigation—including the testimony of 12 defense witnesses who testified to the defendant's good characteristics, his helpfulness to others, and his loyalty to his family and friends—together with evidence of the role that passion and emotion played in the commission of these offenses, the jury still decided that death was the appropriate punishment in this case. The jury's de-

cision to impose the death penalty in the face of this evidence suggests that the additional evidence proposed by the defendant would not likely have altered the jury's determination. See *People v. Holman*, 164 Ill. 2d 356, 373-74 (1995). The jury's decision stemmed in large part from the facts and circumstances of the present crimes, not from the absence of evidence that the defendant was mentally or emotionally disturbed. As we have already noted, evidence of extreme mental and emotional disturbance has a dual nature and can be viewed as either aggravating or mitigating by the sentencer, and we do not believe that further inquiry into the defendant's mental condition would have resulted in imposition of a different sentence.

## B

The defendant next argues that trial counsel was ineffective for pursuing what the defendant believes was a fundamentally flawed and untenable defense at trial, and for permitting the defendant to testify in support of that theory. Specifically, the defendant contends that counsel should not have attempted to establish that the defendant was guilty of second degree murder, for the defendant believes that the evidence in this case was clearly inadequate to support either form of that offense. The defendant notes that the trial judge refused to instruct the jury on either form, a decision that this court upheld on appeal. *Tenner*, 157 Ill. 2d at 370-74.

*Res judicata* and waiver would normally preclude our consideration of this challenge to trial counsel's performance, for these same questions could have been raised on appeal from the defendant's conviction and sentence. A related issue was, in fact, raised on direct appeal, when the defendant argued that trial counsel was ineffective for acknowledging in opening statement at the guilt-innocence phase of the proceedings that the defendant prepared the rope restraints and fired shots

at the victims; appellate counsel then contended that the combination of counsel's concession with the instructions given to the jury, including instructions for felony murder, made a conviction for first degree murder automatic. This court rejected the defendant's challenge to counsel's performance, concluding that the trial attorneys were not ineffective in this respect. *Tenner*, 157 Ill. 2d at 374-78. Because the defendant also contends here that appellate counsel was ineffective in failing to challenge trial counsel's selection of this trial strategy, we believe that it is appropriate to consider the question on its merits.

Discussing trial counsel's acknowledgment that the defendant performed the acts constituting the basis for the charged offenses, we stated on direct appeal:

"In the present case, counsel was attempting to show that the defendant was acting under a mitigating mental state that would have reduced the severity of the homicides from first degree murder to second degree murder. 'It is not at all unusual for a defendant facing a murder charge to argue that he is guilty instead of a less serious offense, such as voluntary manslaughter. [Citations.]' *(People v. Page* (1993), 155 Ill. 2d 232, 262.) Because the defendant's own testimony corresponded to the statements made by defense counsel, we must assume that the defendant consented to this strategy." *Tenner*, 157 Ill. 2d at 376.

These same considerations are pertinent here in assessing counsel's choice of a defense strategy. The State had overwhelming proof of the defendant's commission of the acts involved here, including the testimony of two persons present throughout the offenses. Given the strength of that evidence, counsel could have reasonably concluded that the best option was to attempt to portray the defendant's conduct as the result of sudden and intense passion resulting from provocation or an unreasonable belief in the need for self-defense, which, under either theory, would establish second degree murder. Ill. Rev. Stat. 1987, ch. 38, pars. 9—2(a)(1), (a)(2).

That the trial judge ultimately refused to instruct the jury on either form of second degree murder does not demonstrate that counsel acted unreasonably in pursuing this line of defense. Nor can it be said that the presentation of this theory was useless. By portraying the defendant's actions as the result of provocation or an unreasonable belief in self-defense, counsel could attempt to evoke sympathy for the defendant in the minds of the jurors, which might possibly have led to imposition of a sentence other than death. For these reasons, we do not believe that trial counsel was deficient in this choice of strategy, or that the defendant was prejudiced by it.

## C

The defendant also contends that trial counsel was ineffective for not objecting to some 10 instances of allegedly improper comments by the prosecution in closing argument at the conclusion of the second stage of the capital sentencing hearing. Again, principles of *res judicata* and waiver would normally preclude our consideration of these objections. Because the defendant also argues that appellate counsel was ineffective for failing to challenge trial counsel's performance in this regard, however, we will address this issue on its merits.

It is well established that appellate counsel is not required to raise every conceivable issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-53, 77 L. Ed. 2d 987, 993-94, 103 S. Ct. 3308, 3312-13 (1983); *People v. Collins*, 153 Ill. 2d 130, 140 (1992); *People v. Ruiz*, 132 Ill. 2d 1, 18 (1989); *People v. Frank*, 48 Ill. 2d 500, 505 (1971). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones*, 463 U.S. at 751-52, 77 L. Ed. 2d at 994, 103 S. Ct. at 3313. Although in capital cases the number of issues raised on

appeal customarily exceeds "a few," counsel cannot possibly—and competently—argue every issue imaginable. Page limits and time constraints will both influence appellate counsel's choice of issues, requiring the attorney to exercise judgment in selecting from the potential claims of error that may be asserted on appeal.

We are satisfied in the present case that appellate counsel did not unreasonably fail to raise on appeal the instances of allegedly improper argument cited by the defendant in his post-conviction petition. Our conclusion is confirmed by an examination of the remarks in question. We have examined the comments cited by the defendant and, without reproducing the full text of each of those comments here, we do not believe that appellate counsel was ineffective for failing to challenge these comments on appeal, or that trial counsel was ineffective for failing to register contemporaneous objections to these remarks. In the series of comments challenged here, the defendant maintains that the prosecutor improperly referred to the victims' families, stated that the defendant had "dragged in" mitigating witnesses, advised the jurors that, under their oaths, they were to judge the defendant by his vicious acts, referred to hearsay evidence that the defendant had "tortured" a girlfriend several times over a period of several years, and stated that the defendant had "slashed and slaughtered" a girlfriend on another occasion. In addition, the defendant contends that the prosecutor improperly speculated that the defendant planned the offenses in advance, suggested that the defendant sought out female victims, expressed a personal belief that the defendant should receive the death sentence, told the jury to act on behalf of the victims in this case, and suggested that the defense was concealing a witness. The defendant argues that the preceding remarks were not supported by the evidence, prevented the jury from considering

the mitigating evidence offered by the defense, and were otherwise improper and prejudicial.

On direct appeal, appellate counsel challenged four portions of the prosecution's argument, including two of the comments raised by the defendant here. This court rejected these objections, finding that the remarks either were proper or did not warrant reversal. *Tenner*, 157 Ill. 2d at 382-86. We do not believe that appellate counsel was ineffective for failing to raise the additional remarks cited by the defendant in this post-conviction proceeding. Trial counsel failed to object to 9 of the 10 comments raised here, and on direct appeal our review therefore would have been limited in those instances in which no timely objection was made, allowing a consideration only of whether the asserted impropriety rose to the level of plain error (134 Ill. 2d R. 615(a)), or whether trial counsel was ineffective for failing to make an objection. We believe that the comments cited here were fair inferences from the evidence or were not so egregious as to constitute plain error, or that trial counsel's failure to object to the remarks did not constitute ineffective assistance. We note, too, that the sentencing jury heard the evidence in the case, that the comments complained of were scattered through a lengthy argument, and that the jury was properly instructed on the purpose of closing argument.

## D

In his final challenge to the performance of trial counsel, the defendant argues that counsel was ineffective for failing to comply with the discovery rules applicable to criminal cases. The defendant maintains that evidence supporting his theory of self-defense was excluded by the trial judge because defense counsel had violated Supreme Court Rule 413(d) (134 Ill. 2d R. 413(a)) by not disclosing to the prosecution that that defense would be raised at trial. Because of counsel's failure to

meet the requirements of the rule, the trial judge sustained the State's objection to counsel's assertion in opening statement that the defendant acted in fear of the victims. The defendant believes that trial counsel's error effectively denied him the right to present a part of his defense to the jury.

Principles of *res judicata* and waiver would normally preclude our consideration of this issue. The same evidence now offered by the defendant in support of this contention was available on direct appeal, and a related issue was even raised at that time. Without challenging the competency of the defendant's trial attorneys, appellate counsel argued then that the trial judge improperly limited the presentation of the theory of defense in ruling that counsel could not mention, in opening statement, the defendant's alleged fear of the victims. We did not rule on that contention on direct appeal, however, concluding that the trial judge's correct refusal of instructions on second degree murder made the question moot. *Tenner*, 157 Ill. 2d at 374. Because we did not previously rule on this matter, and because the defendant now frames the issue as one involving the ineffective assistance of both trial counsel and appellate counsel, we will consider the question here.

Assuming that trial counsel was deficient in failing to comply with the requirements of Rule 413, we do not believe that the defendant was prejudiced by trial counsel's failure to provide timely notice of the anticipated defense. Notwithstanding the trial judge's initial ruling, the defendant was not actually precluded from presenting the self-defense theory at trial. As the State observes, the defendant stated repeatedly in his testimony at trial that he was "scared," "afraid," or "in fear" of the victims and acted in response to their perceived threats. Defense counsel succeeded in making the same point in closing argument at trial. The State

did not object to those portions of the defendant's testimony or counsel's argument. Although trial counsel was prevented from raising the theory in opening statement, he was still able to introduce it through the defendant's testimony and in subsequent argument to the jury. The trial judge later refused to instruct the jury on second degree murder and the defendant's claim that he acted from an unreasonable belief in the need for self-defense, but the reason for the judge's ruling was the inadequacy of the evidence offered in support of the theory, not counsel's failure to comply with the discovery mandate. The defendant was not prejudiced by counsel's failure to comply with the discovery rule.

## II

The defendant next argues that his right to present a defense was denied by a policy of the Cook County jail that prevented a probationary correctional officer from testifying in the defendant's behalf as a mitigation witness at the second stage of the capital sentencing hearing. The defendant also contends that the State's Attorney's office knew or should have known of the alleged policy, and that the prosecution failed to disclose it. Finally, the defendant argues that trial counsel was ineffective for failing to bring forth evidence of the alleged policy at the sentencing hearing to explain the absence of the additional witness.

Our consideration of this issue is doubly handicapped, for the defendant has presented insufficient evidence of the existence of the policy alleged and has provided no written offer of proof of what the witness in question would have testified to. Included in the defendant's post-conviction petition is a memorandum by a defense investigator, in which the investigator reported that he learned of the supposed policy from two sources: from the superintendent of the jail, and from the guard whom the defense sought to call as a witness. The

investigator related that he was told by those two sources that probationary correctional officers could be subpoenaed but that they were not to testify in behalf of an inmate. The defendant does not explain how such a witness could avoid testifying if he appeared in course in response to a subpoena. We note also that another probationary correctional officer did testify in the defendant's behalf at the sentencing hearing. As the State observes, the policy cited by the defendant apparently did not prevent that guard from appearing as a mitigation witness.

Even if the policy in question existed, we are unable to conclude that the defendant was prejudiced by it, or by counsel's failure to raise the matter at sentencing. The defendant has failed to set forth the substance of the potential witness' anticipated testimony. In the absence of a showing of what that testimony would have been, it is impossible for this court to attempt to determine the witness' potential impact on the sentencing jury. A post-conviction petitioner is not entitled to an evidentiary hearing as of right. *People v. Thomas*, 164 Ill. 2d 410, 416 (1995). An evidentiary hearing is necessary only when the petitioner makes a substantial showing of a constitutional deprivation, supported by the record or affidavits. *People v. Gaines*, 105 Ill. 2d 79, 91-92 (1984); *People v. Curtis*, 48 Ill. 2d 25, 27-28 (1971). Assuming, however, that the second guard would have corroborated the testimony of the correctional officer who did appear, and who described the defendant as a model prisoner, we do not believe that the defendant was prejudiced by the absence of the second guard's testimony. The sentencing jury heard mitigating testimony from a substantial number of witnesses, who described various facets of the defendant's life, including his conduct while incarcerated. Given the circumstances of the present offenses and the mitigating evi-

dence introduced by defense counsel, we do not believe that the jury would have reached a different sentencing decision if it had heard favorable yet cumulative testimony from a second guard describing the defendant's behavior in jail.

## III

In his final post-conviction claim, the defendant argues that appellate counsel acted under a conflict of interest and rendered ineffective assistance. We have already disposed of the defendant's allegations of ineffective assistance of appellate counsel in our preceding discussion, however, and these issues require no further treatment here. One additional allegation made by the defendant warrants brief comment, however. The defendant makes the generalized complaint that appellate counsel was laboring under a conflict of interest in representing the defendant on appeal. The defendant offers no evidence in support of this contention, but he apparently believes that the conflict arose because appellate counsel and trial counsel were employed by the same entity, the public defender's office of Cook County. Beyond the identity of the attorneys' employer, however, the defendant offers nothing to support the charge of a conflict, and we fail to see in what way the defendant was prejudiced in this case by the appellate representation. See *People v. Banks*, 121 Ill. 2d 36 (1987). It should be noted that counsel on direct appeal challenged the performance of counsel at trial. Moreover, the defendant specifically asked the trial judge to appoint the public defender's office to handle the appeal. In the absence of evidence of an actual conflict, we do not believe that the defendant may now complain of that choice.

\* \* \*

For the reasons stated, the judgment of the circuit

court of Cook County is affirmed. The clerk of this court is directed to enter an order setting Tuesday, May 20, 1997, as the date on which the sentence of death entered in the circuit court of Cook County is to be carried out. The defendant shall be executed in the manner provided by law (725 ILCS 5/119—5 (West 1994)). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where the defendant is now confined.

*Judgment affirmed.*