2022 IL App (1st) 201278

SECOND DIVISION
April 12, 2022

No. 1-20-1278

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Respondent-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 97 CR 26081 |
| RICHARD HUFF, | ) | |
| | ) | Honorable |
| Petitioner-Appellant. | ) | Carol M. Howard, |
| | ) | Judge Presiding. |
| | ) | |
| | ) | |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Cobbs concurred.

**O R D E R**

¶ 1     *Held*:   The circuit court's second stage dismissal of the petitioner's postconviction petition is affirmed where the petitioner failed to establish that his appointed postconviction counsel rendered unreasonable assistance by not substantially complying with Rule 651(c) (Ill. S. Ct. 651(c) (eff. July 1, 2017)) when she chose to rest on his *pro se* petition.

¶ 2     After a jury trial in the circuit court of Cook County, the petitioner, Richard Huff was

convicted of first-degree murder in the beating death of his five-year-old daughter and sentenced to natural life in prison. After the petitioner filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)), the petition was automatically advanced to the second stage of postconviction proceedings, and the circuit court appointed counsel to represent him. After appointed counsel filed a certificate pursuant to Rule 651(c) (Ill. S. Ct. 651(c) (eff. July 1, 2017)) stating that she would not amend the *pro se* petition, the State filed a motion to dismiss, which the circuit court granted. The petitioner now appeals contending that his postconviction counsel failed to provide a reasonable level of assistance as required under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) by failing to either amend his *pro se* petition to adequately present his claim of error or withdraw from the case and state the reasons why the petitioner's claim lacked merit. The petitioner requests that we reverse the dismissal of his *pro se* petition and remand for further second-stage proceedings. For the following reasons, we affirm.

¶ 3                                 I. BACKGROUND

¶ 4     The record before us reveals the following relevant facts and procedural history. In September 1997, the petitioner was indicted with one count of first-degree murder for repeatedly beating the victim, his five-year-old daughter, with a belt over a period of several hours, ultimately resulting in her death. 720 ILCS 5/9-1(a)(2) (West 1996)). The petitioner proceeded with a jury trial at which the following relevant evidence was adduced.

¶ 5     On September 10, 1997, the 26-year-old petitioner returned home after midnight and found the victim awake because she had not finished her kindergarten homework, which consisted of tracing and coloring. After learning that the victim's teacher had complained that the victim had not been turning in her homework, the petitioner told the victim that she had 15 minutes to finish

her assignment. At the end of the 15 minutes, the petitioner hit the victim with a belt and, after noticing that she had placed playing cards in her underwear to protect against the belt, he told her to take off her clothes. The petitioner then gave the victim another 15-minute deadline.

¶ 6      Over the next three hours, the petitioner repeatedly whipped the naked victim every 15 to 20 minutes with a leather belt and electrical wire. During that time, the victim tried to run away from the petitioner several times. Consequently, she fell and hit her head numerous times. At the end of the three hours, the victim was naked, bleeding and bruised.

¶ 7      While the petitioner's girlfriend, who was also present in the home, asked the petitioner to "cool out," the petitioner retorted that she had no right to tell him how to discipline his children, and continued beating the victim. In fact, the petitioner did not cease the whipping until his girlfriend told him that the victim was bleeding, which he failed to notice.

¶ 8      After the victim washed herself, the petitioner put her to bed, but kept her awake because he was worried about her head injuries. A few hours later, he found her unresponsive, lying on the floor of her bedroom. After being taken to the hospital, the victim was pronounced dead. An autopsy subsequently revealed that she died from multiple blunt force trauma.

¶ 9      At the close of trial, the jury found the petitioner guilty of first-degree murder and the parties proceed with sentencing.

¶ 10     The State sought the imposition of the death penalty, arguing that because the victim was under 12 years old, the offense was exceptionally brutal and heinous and indicative of wanton cruelty. The petitioner waived his right to a jury for the death penalty sentencing phase and agreed that the circuit court alone should determine whether he was eligible for the death penalty. The circuit court found that the defendant was eligible but declined to impose the death penalty based on the petitioner's lack of prior criminal history. Nonetheless, finding that the petitioner's conduct

was "extremely brutal or heinous" the court sentenced the petitioner to natural life imprisonment.

¶ 11    The petitioner appealed his conviction and sentence, arguing, *inter alia*, that his natural life sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000) because the sentence was based on a finding of "exceptionally brutal and heinous behavior" made by the trial judge, rather than a jury. This appellate court affirmed the petitioner's conviction and sentence, finding that *Apprendi* did not apply to a circuit court's finding of "exceptionally brutal and heinous behavior," and that where a defendant is first found eligible for the death penalty, the circuit court is permitted to impose a sentence of natural life without implicating *Apprendi*. See *People v. Huff*, No. 1-00-2414 (September 28, 2001) (unpublished order pursuant to Illinois Supreme Court Rule 23) (hereinafter *Huff I*).

¶ 12    On February 10, 2005, the petitioner filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2004)), again asserting, *inter alia*, that his extended term sentence was unconstitutional under *Apprendi*. After the State filed a motion to dismiss, the circuit court ruled in favor of the State, finding that the petitioner's section 2-1401 petition was untimely and that the petitioner's sentencing claims were barred by the doctrine of *res judicata*. On November 9, 2006, this appellate court affirmed the circuit court's decision, finding that the petitioner's claims were frivolous and lacked merit. *People v. Huff*, No. 1-05-1769 (November 9, 2006) (unpublished order pursuant to Illinois Supreme Court Rule 23) (hereinafter *Huff II*). The appellate court reiterated that on direct appeal it had already held that when a defendant is found eligible for the death penalty, the circuit court may impose a natural life sentence without implicating *Apprendi*. *Id*. The court further agreed that the petitioner's claims were barred by *res judicata* and that the petition had been untimely

4

filed. *Id*.

¶ 13    On July 19, 2016, the petitioner filed the instant *pro se* postconviction petition again contending that his natural life sentence, based on the trial judge's finding that the offense was "brutal and heinous" was unconstitutional under *Apprendi*. The petitioner recognized that he had already raised this issue and that it had been rejected by this appellate court twice. Nonetheless, he asserted that the law had evolved since his direct appeal, and that therefore the court should reconsider his claim. With respect to the timeliness of his petition, the petitioner asserted that because his petition advanced a claim that the court lacked the inherent power to enter the order involved, *i.e*., a claim that his sentence was void, the claim was not subject to the ordinary statutory limitation period for post-conviction petitions and could be raised at any time.

¶ 14    On February 15, 2017, the petition was docketed for second stage postconviction proceedings, and the circuit court appointed the Office of the Cook County Public Defender to represent the petitioner. On June 2, 2017, appointed postconviction counsel appeared on behalf of the petitioner and asked the court to order the release of the petitioner's transcripts and records from the clerk of the circuit court.

¶ 15    Over the next year and a half, postconviction counsel repeatedly informed the court that the records in the petitioner's case had yet to be released to her by the clerk's office. On January 3, 2018, counsel presented a motion for rule to show cause against the clerk of the circuit court, which the court granted.

¶ 16     On February 2, 2018, postconviction counsel informed the court that she had finally received the records from the clerk's office and that she would begin reviewing them. At the next several court hearings, counsel informed the court that she was still reviewing the records and that because the petitioner was raising an *Apprendi* claim she wanted to reach out to a colleague who

had handled a similar issue before. On June 13, 2018, counsel filed a certificate pursuant to Illinois Supreme Court Rule 615(c) (eff. July 1, 2017) certifying that she had: (1) consulted with the petitioner by phone, mail, electronic means or in person to ascertain his contentions of deprivations of constitutional rights; (2) obtained and examined the record of proceedings prior to and including the trial and sentencing in the case; (3) read and researched the issues presented in the petitioner's *pro se* petition; and (4) not prepared a supplemental petition because the *pro se* petition "adequately set[] forth the petitioner's claim of deprivation of his constitutional rights."

¶ 17    On December 12, 2019, the State filed a motion to dismiss the petition on three grounds. First, the State argued that the petitioner was procedurally barred from filing the petition because it was filed beyond the statute of limitations. The State pointed out that the petition was due on May 2, 2002, but that it was not filed until July 19, 2016. In addition, the State pointed out that the petitioner had not asserted any facts showing that the delay in filing was not a result of his own culpable negligence. Moreover, in response to the petitioner's assertion that his sentence was void, and could therefore be attacked at any time, the State contended that the void sentence rule was abolished by *People v. Castleberry*, 2015 IL 116916. Second, the State argued that the petitioner's claim was barred by *res judicata* because the appellate court had considered the same *Apprendi* arguments in affirming his sentence on direct appeal and in affirming the dismissal of his section 2-1401 petition for relief from judgment (735 ILCS 5/2-1401 (West 2004)). Lastly, the State asserted that the petitioner's *Apprendi* claim should be dismissed because the petitioner failed to establish prejudice. Specifically, the State argued that even if there had been an *Apprendi* error, any such error was necessarily harmless because no *reasonable* jury would have found that the petitioner's conduct in beating his five-year-old daughter to death was not brutal and heinous and

indicative of wanton cruelty.

¶ 18    After the State filed its motion, the case was continued several times. On October 27, 2020, postconviction counsel informed the court that she "had the chance to review the case at length," and that she would not be filing a written response. Instead, she stated that she would be resting on her Rule 651(c) certificate and the petitioner's *pro se* postconviction petition.

¶ 19    On November 2, 2020, the court heard arguments on the State's motion to dismiss via Zoom. The petitioner's postconviction counsel waived the petitioner's appearance and rested on his *pro se* petition. The State reiterated its most salient argument, *i.e.*, that the petitioner's claim was barred by *res judicata* because the *Apprendi* issue had already been considered and rejected twice by the appellate court. The circuit court granted the State's motion based on *res judicata*. The petitioner now appeals.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, the petitioner does not argue the merits of his petition, nor does he contend that dismissal of his petition was improper based on either timeliness or *res judicata*.[1] Instead, he solely contends that he did not receive reasonable assistance from his postconviction counsel. In this respect, the petitioner asserts that postconviction counsel essentially conceded the State's motion to dismiss by failing to: (1) amend his *pro se* postconviction petition; (2) file a written response to the State's motion; or (3) make any arguments during the motion to dismiss hearing. The petitioner asserts that postconviction counsel was required to either amend his *pro se* petition to adequately present his claim of error and respond to the State's motion or, in the alternative withdraw from the case, thereby allowing the petitioner to advance his claim on his own or through new counsel.

---

[1] Because the petitioner does not raise these contentions, nor argues the merits of his *Apprendi* claim, he has forfeited any such arguments for purposes of this appeal. *People v. Cotto*, 2016 IL 119006, ¶ 49; *People v. Bass*, 2018 IL App (1st) 152650, ¶ 10; Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (points not raised on appeal are forfeited).

The petitioner therefore urges this court to reverse the circuit court's dismissal order and remand for appointment of new postconviction counsel. For the following reasons, we disagree.

¶ 22    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a means by which a criminal defendant may challenge his conviction on the basis of a "substantial deprivation of federal or state constitutional rights." *People v. Tenner*, 175 Ill. 2d 372, 378 (1997); *People v. Haynes*, 192 Ill. 2d 437, 464 (2000); see also *People v. Lenoir*, 2021 IL App (1st) 180269, ¶ 27. A postconviction action is a collateral attack on a prior conviction and sentence, and "is not a substitute for, or an addendum to, direct appeal." *People v. Kokoraleis*, 159 Ill. 2d 325, 328 (1994); see also *Lenoir*, 2021 IL App (1st) 180269, ¶ 27. Accordingly, "[i]ssues raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised but were not are forfeited." *Lenoir*, 2021 IL App (1st) 180269, ¶ 27.

¶ 23    The Act creates a three-stage procedure for postconviction relief. *People v. Makiel*, 358 Ill. App. 3d 102, 104 (2005); see also *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). Proceedings under the Act are commenced by the filing of a petition in the circuit court that contains the allegations pertaining to the substantial denial of the petitioner's constitutional rights. *People v. Jones*, 213 Ill. 2d 498, 503 (2004). At the first stage, the circuit court must, within 90 days after the petition is filed and docketed, independently review the petition and determine whether the allegations, if taken as true, demonstrate a constitutional violation or whether they are "frivolous" or "patently without merit." 725 ILCS 5/122-2.1(a) (2) (West 2016); *People v. Perkins*, 229 Ill. 2d 34, 42 (2007).

¶ 24    If, as here, the circuit court does not dismiss the petition as frivolous or patently without merit within the first 90 days, the petition automatically advances to the second stage, where it is docketed for additional consideration. 725 ILCS 122-2.1(b) (West 2016). At the second stage, the

circuit court will appoint an attorney for the petitioner if he cannot afford one and the State is entitled to file responsive pleadings. *People v. Steward*, 406 Ill. App. 3d 82, 88 (2010).

¶ 25    During the second stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a violation of constitutional rights. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). In doing so, the circuit court may not "engage in fact finding or credibility determinations," but must take all well-pleaded facts in the petition as true unless positively rebutted by the record. *People v. Domagala*, 2013 IL 113688, ¶ 35; *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006); see also *People v. Towns*, 182 Ill. 2d 491, 501 (1998). If the circuit court determines that the petitioner made a substantial showing of a constitutional violation, the petition proceeds to the third stage for an evidentiary hearing. *Domagala*, 2013 IL 113688, ¶ 35; see also *Edwards*, 197 Ill. 2d at 246. Conversely, where no substantial showing is made the petition is dismissed. *Id*.

¶ 26    When, as here, counsel is appointed to represent an indigent petitioner at the second stage of postconviction proceedings, the petitioner is only entitled to a "reasonable" level of assistance. *People v. Custer*, 2019 IL 123339, ¶ 30; see also *People v. Johnson*, 2018 IL 122227, ¶ 16; *People v. Greer*, 212 Ill. 2d 192, 204 (2004). Because appointment of counsel at this stage is a matter of "legislative grace" and not a constitutionally guaranteed right, the standard is significantly lower than the "effective assistance of counsel" level required at trial. *Perkins*, 229 Ill. 2d at 42; *Custer*, 2019 IL 123339, ¶ 30.

¶ 27    Our supreme court has explained that to provide a "reasonable" level of assistance, postconviction counsel must perform specific duties as articulated by Illinois Supreme Court Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)). See *Custer*, 2019 IL 123339, ¶ 32; see also *People v. Malone*, 2017 IL App (3d) 140165, ¶ 10. This rule requires that counsel: (1) consult with the

petitioner (either by mail or in person) to ascertain his contentions of deprivation of constitutional rights; (2) examine the record of the trial proceedings; and (3) make any amendments to the *pro se* petition that are necessary for an adequate representation of the petitioner's contentions. See Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Fulfillment of the third obligation does not require postconviction counsel to either amend the *pro se* petition (*Malone*, 2017 IL App (3d) 140165, ¶ 10) or to "advance frivolous or spurious claims on defendant's behalf" (*Greer*, 212 Ill. 2d at 205). Indeed, "if amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *Greer*, 212 Ill. 2d at 205.

¶ 28    The filing of a Rule 651(c) certificate creates a rebuttable presumption that postconviction counsel provided reasonable assistance. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. "A defendant has the burden of overcoming that presumption by demonstrating that counsel failed to substantially comply with the duties set out in Rule 651(c)." *People v. Rivera*, 2016 IL App (1st) 132573, ¶ 36.

¶ 29    We review both the dismissal of a second stage postconviction petition and the question of whether counsel provided reasonable assistance *de novo. People v. Wallace*, 2018 IL App (5th) 140385, ¶ 31. In doing so, we may affirm the circuit court's dismissal on any basis shown in the record. *People v. Davis*, 382 Ill. App. 3d 701, 706 (2008).

¶ 30    In the present case, after a review of the record, we find that the petitioner has failed to rebut the presumption that his postconviction counsel rendered reasonable assistance in substantial compliance with Rule 651(c) (eff. July 1, 2017).

¶ 31    The record before us reveals that after being appointed to represent the petitioner on June 2, 2017, postconviction counsel immediately requested the transcripts and records of the

petitioner's case from the clerk's office. After failing to receive those records in a timely fashion, postconviction counsel filed a successful motion for rule to show cause compelling the clerk of the circuit court to release the documents. From February 2, 2018, until June 13, 2018, counsel reviewed the records and contacted a colleague in her department, who had previous experience with *Apprendi* claims. Counsel subsequently filed a Rule 651(c) certificate, attesting that she had examined the record of the proceedings, consulted with the petitioner to ascertain his contentions of deprivation of constitutional rights, and read and researched the issues raised by his petition. Counsel then certified that she would not amend the *pro se* petition because it "adequately set[] forth the petitioner's claim."

¶ 32    On appeal, the petitioner contends that counsel's decision not to amend his petition and her subsequent failure to respond to the State's motion to dismiss rendered him with unreasonable assistance. The petitioner, however, does not explain how counsel should have amended his *pro se* petition or responded to the State's motion to dismiss to further his *Apprendi* claim. Nor can he, since he himself acknowledges that his claim was already addressed and rejected by this appellate court twice. Rather, the petitioner argues that if counsel determined that his petition lacked merit, which he presumes she did by mere failure to respond to the State's motion to dismiss, counsel had an ethical duty to withdraw. In support, the petitioner relies on *Greer*, 212 Ill. 2d 192 (2004), *People v. Kuehner*, 2015 IL 117695, ¶ 21, and *People v. Shortridge*, 2012 IL App (4th) 100663. For the following reasons, we disagree and find those case inapposite.

¶ 33    Contrary to the petitioner's position, postconviction counsel was not required to choose between amending the *pro se* petition or withdrawing as counsel. Rather, our appellate courts have repeatedly held that both options were available to her. See *e.g.*, *People v. Pace*, 386 Ill. App. 3d 1056, 1062 (2008) ("Rule 651(c) does not require counsel to amend the *pro se* petition. [Citation.]

11

Indeed, ethical obligations prohibit counsel from doing so if the claims are frivolous or spurious. [Citation.] The question remains what should counsel do if counsel investigates the claims but finds them without merit. The case law provides two options. One is to stand on the allegations in the *pro se* petition and inform the court of the reason the petition was not amended [Citation.] Another is to withdraw as counsel [Citation.]"); see also *People v. Dixon*, 2018 IL App (3d) 150630, ¶¶ 21-22 ("If counsel had found all the claims in the petition to be frivolous, the appropriate procedure would have been to stand on the *pro se* petition or seek to withdraw as counsel."); *People v. Bass*, 2018 IL App (1st) 152650, ¶ 20 ("whether appointed counsel elects to withdraw and inform the court of the reasons why the petition lacks merit or instead elects to stand on the *pro se* petition, the result is the same"); *Malone*, 2017 IL App (3d) 140165, ¶ 10 ("If the claims are frivolous, postconviction counsel has the option of standing on the allegations in the *pro se* petition or to withdraw as counsel.").

¶ 34    The petitioner's reliance on *Greer*, *Kuehner*, and *Shortridge* to the contrary is misplaced.

¶ 35    In *Greer*, 212 Ill. 2d at 195-96, the petitioner's appointed postconviction counsel determined that the *pro se* petition was meritless and therefore sought to withdraw as counsel. After the circuit court dismissed the petition *sua sponte*, the appellate court affirmed the circuit court's decision to grant postconviction counsel's request to withdraw but reversed the *sua sponte* dismissal. *Id*. The case proceeded to our supreme court solely on the issue of postconviction counsel's right to withdraw. *Id.* at 195-96. The supreme court held that once postconviction counsel determines that the petitioner's claims are frivolous and patently without merit, counsel is under no obligation to continue representing the petitioner. *Id*. at 209. The court also noted that if the claims are frivolous, counsel is ethically prohibited from further representing the petitioner. *Id*.

at 205.

¶ 36    Accordingly, while *Greer* authorizes withdrawal of postconviction counsel where the petition cannot be amended to state a meritorious claim, it nowhere creates a *per se* requirement that counsel must withdraw instead of complying with Rule 651(c) (eff. July 1, 2017) and standing on the *pro se* petition. See *Malone*, 2017 IL App (3d) 140165, ¶ 12 (Although *Greer* "allows postconviction counsel to withdraw when the allegations of the petition are without merit and frivolous, it does not *compel* withdrawal under such circumstances. [Citation.] Whether postconviction counsel stood on the *pro se* petition or withdrew as counsel is a distinction without a difference.")

¶ 37    The petitioner's reliance on *Kuehner*, 2015 IL 117695 is similarly misplaced. In that case our supreme court considered the duties of a postconviction counsel who attempts to withdraw after an "affirmative judicial determination that the *pro se* petition is neither frivolous nor patently without merit." *Id.* ¶ 27. The court held that where a *pro se* petition is advanced to the second stage of proceedings on an explicit finding by the circuit court that the petition is not frivolous or patently without merit, appointed postconviction counsel cannot second guess the circuit court's findings but rather must "move the process forward by cleaning up the [petitioner's] *pro se* claims and presenting them to the court for adjudication." *Id.* ¶ 21. The court further held, however, that if postconviction counsel discovers a reason that would ethically prohibit him from presenting the claims to the court, he "bears the burden of demonstrating, with respect to each of the [petitioner's] *pro se* claims, why the trial court's initial assessment was incorrect." *Id.*

¶ 38    Contrary to the petitioner's position, nothing in *Kuehner* suggests that appointed postconviction counsel has the same obligation where, as here, the *pro se* petition is automatically docketed and advanced to the second stage of postconviction proceedings without the circuit court

ever making a determination about the frivolity of the *pro se* petition. Moreover, nothing in *Kuehner* even suggests, let alone prohibits counsel from standing on the *pro se* petition if she otherwise complies with the requirements of Rule 651(c) (eff. July 1, 2017).

¶ 39   Lastly, we also reject the petitioner's reliance on *Shortridge*, 2012 IL App (4th) 100663. In that case, appointed postconviction counsel did not just fail to amend the *pro se* petition. Instead, he "confess[ed] the motion to dismiss." *Id.* ¶ 6. The appellate court held that counsel's act of "confessing the motion to dismiss," did not fall within the reasonable level of assistance guaranteed under the Act. *Id.* ¶ 15. Citing *Greer*, the court stated that "[i]f counsel, in fact, found the allegations 'nonmeritorious,' even with any necessary amendments, then he should have moved to withdraw as counsel, *not confess the State's motion to dismiss*." (Emphasis added). *Id*. ¶ 14.

¶ 40   Unlike in *Shortridge*, where postconviction counsel neither stood on the *pro se* petition nor moved to withdraw but, instead, pursued a third, impermissible alternative—confessing the State's motion to dismiss, here, postconviction counsel chose to rest on the *pro se* petition, explaining that the petition adequately set forth the petitioner's arguments. Accordingly, counsel's decision to rest on the *pro se* petition does not support the petitioner's claim of unreasonable assistance. See *Dixon*, 2018 IL App (3d) 150630, ¶¶ 21-22; see *Malone*, 2017 IL App (3d) 140165, ¶ 10; see *Pace*, 386 Ill. App. 3d at 1062.

¶ 41                                  III. CONCLUSION

¶ 42   For the foregoing reasons we find that the petitioner has failed to rebut the presumption that his postconviction counsel rendered reasonable assistance in substantial compliance with Rule 651(c) (eff. July 1, 2017). Accordingly, we affirm the circuit court's dismissal of the petitioner's

postconviction petition.

¶ 43    Affirmed.