THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BARRY A. NELSON, Defendant-Appellant.

Third District    No. 3—93—0529

Opinion filed October 10, 1995.

878

Kenneth A. Grnacek, of Kallan & Grnacek, of Joliet, for appellant.

Michael J. Herr, State's Attorney, of Aledo (John X. Breslin and Lawrence Michael Kaschak, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial, the defendant, Barry A. Nelson, was found guilty on three counts of unlawful delivery of a substance containing cannabis (720 ILCS 550/5 (West 1994)). The defendant was sentenced to concurrent terms of three years in prison on two of the counts and to four years in prison on the third count. In addition, he was ordered to pay fines, fees and costs totaling more than $5,500. The defendant appeals, arguing reversible error occurred when the prosecutor questioned him about a previous felony conviction during cross-examination. For the reasons set forth below, we reverse and remand.

In December 1992, the defendant was charged with selling cannabis to an undercover police officer. The transactions allegedly took place on three dates in February 1992—the 7th, the 14th and the 26th. At trial, Officer Thomas Wiley, a special agent with the Henry-Mercer County Drug Task Force, testified that he was introduced to the defendant through a confidential informant in January 1992. Wiley testified he was present on three occasions when the confidential informant purchased cannabis from the defendant.

Thereafter, on February 7, 1992, Wiley met with the defendant in downtown New Boston at a phone booth. According to Wiley, the confidential informant set up the meeting. The confidential informant did not accompany Wiley to the "buy." Wiley testified the defendant was driving a pickup truck with license plate number 3594 GB. The registered owner of the vehicle was the defendant. Wiley recognized the defendant as the man who had earlier sold drugs to the confidential informant. At the phone booth, the defendant got out of the pickup truck and entered Wiley's undercover vehicle. He sold approximately one ounce of cannabis to Wiley for $240.

Wiley was not sure of the time of day when the February 7, 1992, transaction took place. He believed it was late afternoon or early evening. It was also brought out on cross-examination that Wiley's report mentioned a second person who was allegedly driving the defendant's pickup truck on that day, although there was no identification or physical description. Wiley also could not recall the actions of the defendant immediately after he exited the undercover vehicle. He could not recall the location of the pickup truck or how the defendant left the scene.

Wiley testified he next met with the defendant on February 14, 1992, at the same location in downtown New Boston. Wiley had contacted the defendant directly and set up the meeting. They agreed to meet at the phone booth in New Boston. On this occasion the defendant arrived in a "darker vehicle" with another person driving the car. On cross-examination, Wiley indicated the other person was a white female. According to Wiley's report, the transaction took place around 3 p.m. The defendant got into Wiley's car and the dark-colored vehicle drove westbound on Route 17 toward the Mississippi River. The defendant sold Wiley approximately one ounce of cannabis and instructed Wiley to drive to the Mississippi River, where the "dark-colored" car was waiting. A check of the license plate number on the car showed it was registered to the defendant.

Wiley again called the defendant on February 25 or 26 and asked if he could purchase cannabis. Wiley testified he met with the defendant at the phone booth in New Boston on February 26, 1992. The defendant was driving the same dark-colored car used in the February 14, 1992, transaction. From his car, the defendant motioned to Wiley to follow him. Wiley followed the defendant to a cemetery outside of New Boston. At the cemetery, the defendant got into Wiley's undercover vehicle. Wiley purchased approximately $1^1/2$ ounces of cannabis from the defendant in exchange for $360. According to Wiley's report, the transaction took place after 3:50 p.m. Wiley testified the entire transaction lasted 15 or 20 minutes.

Wiley testified there were further telephone conversations with the defendant after February 26, 1992. Wiley testified he inquired of the defendant whether he could buy other drugs from the defendant. However, there were no further sales.

Wiley testified there was no doubt in his mind that the defendant was the person who sold cannabis to the confidential informant and to him in January and February of 1992.

On cross-examination, Wiley was asked about the money used to make the purchases. Wiley testified the task force used what is termed "official advanced funds" (OAF) in making these purchases. Wiley further testified such money is on occasion marked in an attempt to trace such funds. Wiley testified that no OAF was recovered from the defendant following his arrest.

Wiley also agreed that defendant's fingerprints were never recovered from any of the packages containing cannabis. In addition, no physical description of the defendant appears in any of the reports filed by Wiley.

Police officer Thomas Bennett testified he was working surveillance during the February 7, 1992, transaction in downtown New Boston. He was there to provide backup. He was parked three-quarters of a block away from Wiley's vehicle. He testified that he saw the defendant get out of a rusty white pickup truck and enter Wiley's undercover vehicle. Although Bennett also worked surveillance during the February 14, 1992, transaction, he was unable to observe the person involved in the transaction. Other officers who testified at the defendant's trial were not able to see the individual or individuals involved in the transactions.

The defendant offered the testimony of Eric Zimmerman, a mechanic and friend of the defendant. According to Zimmerman, he received a telephone call from the defendant shortly after lunch on February 14, 1992. The defendant told Zimmerman he was having a problem with a tension belt on his car. He asked Zimmerman to come out to his home to help him fix the problem. At trial, Zimmerman opined that, based on the description of the problem, he did not believe the vehicle was in a drivable condition.

Zimmerman arrived at the defendant's home between 5:30 p.m. and 5:40 p.m. Zimmerman and the defendant worked on the car until after 9 in the evening. On cross-examination, Zimmerman conceded he did not actually observe that the car was inoperable until after 5 p.m. In addition, he had no knowledge of the actual condition of the car earlier that day.

The defendant also presented the testimony of five relatives who testified the defendant was with them at Franciscan Hospital in Mo-

line during the afternoon of February 26, 1992. These family members were either cousins or married to cousins of the defendant's wife. They were present at the hospital because a senior member of the wife's family was dying. Their testimony, *in toto*, placed the defendant at the hospital from shortly after noon till approximately 6 p.m.

The defendant testified he did not sell cannabis to Wiley. He testified his car was not operating on February 14, 1992, and that he was at Franciscan Hospital the entire afternoon of February 26, 1992. On cross-examination, the State's Attorney asked the defendant the following question: "Isn't it true, Mr. Nelson, that you've previously been convicted of a felony?" The defendant responded, "Yes, I have." The State's Attorney asked no further questions on the subject and proceeded to ask a couple more questions about the defendant's activities at Franciscan Hospital on February 26, 1992.

Immediately thereafter defense counsel asked only one question on redirect, namely, "Barry, was the felony that you were convicted of a drug-related charge?" The defendant responded, "No, it was not." The defense rested and the State offered no rebuttal. The jury found the defendant guilty on all three counts.

■ On appeal, the defendant contends he was denied a fair trial when the State's Attorney asked whether he had previously been convicted of a felony. Conceding that defense counsel raised no objection to the question and that no post-trial motion was filed, the defendant requests this court address the issue under the plain error doctrine.

Conceding there are cases considering the issue under the plain error rule, the State asks this court to follow two cases applying the waiver rule. However, a review of those cases shows they are readily distinguishable from the case before us.

In *People v. Cunitz* (1977), 45 Ill. App. 3d 165, 359 N.E.2d 1070, during cross-examination, the defendant was asked what he had been doing in a South Carolina town prior to his return to Illinois. The defendant responded he was "serving time there." On recross, he was asked for what crimes he was serving time. There was no objection from defense counsel. In finding the issue was waived by the failure to object, the *Cunitz* court held the case was controlled by *People v. McCrimmon* (1967), 37 Ill. 2d 40, 224 N.E.2d 822. However, the *McCrimmon* case did not deal with an instance where no objection was raised.

In *McCrimmon*, the prosecution presented the testimony of a clerk of the court to testify to the defendant's prior conviction in the same court. The witness testified from his knowledge of the "Judge's

docket." Defense counsel did not object to the manner in which the prior conviction was presented, that is, through parol testimony of the clerk rather than submission of the record or a certified copy thereof. He did, however, object at the conclusion of the clerk's testimony contending there was no proof of the impaneling of a jury or the waiver of a jury in the previous case.

On appeal to the supreme court, the defendant asked the court to find it was error to admit parol evidence of his prior conviction. The *McCrimmon* court held that the objection to the evidence on a stated ground constituted a waiver of objection on grounds not specified. The *McCrimmon* court was applying the long-standing general rule that a specific objection, based solely on particular grounds, amounts to a waiver of objections on all grounds not specified or relied upon. See *Town of Cicero v. Industrial Comm'n* (1949), 404 Ill. 487, 89 N.E.2d 354; *Bafia v. City International Trucks, Inc.* (1994), 258 Ill. App. 3d 4, 629 N.E.2d 666.

In the instant case, there was no objection to the question of the State's Attorney. Thus, the reasoning of *McCrimmon* is not applicable to the case before us. We note that in *Cunitz*, there was no objection raised to the prosecutor's questions. Therefore, the brief reasoning of the *Cunitz* court, with its reliance on *McCrimmon*, is unpersuasive authority for the State's position.

The other case relied on by the State, *People v. Rhodes* (1980), 81 Ill. App. 3d 339, 401 N.E.2d 237, is distinguishable in that in that case the defendant "opened the door" during direct examination by defense counsel. During direct examination, the defendant testified he had one prior conviction for burglary and that he had served time in the penitentiary. On cross-examination, the prosecutor brought out the fact that the defendant had pled guilty to two charges of burglary in exchange for a recommendation of a minimum sentence and dismissal of two other charges.

On the other hand, in *People v. Cassman* (1973), 10 Ill. App. 3d 301, 293 N.E.2d 710, the court held that eliciting an answer to the question, "Have you ever been convicted of a felony?" was error of such magnitude as to constitute plain error. In *Cassman*, the defendant did not raise any objection at trial, nor was the issue raised in the post-trial motion. The *Cassman* court relied on Illinois Supreme Court cases which state there is no question more damaging to a defendant with a jury than one which suggests or intimates that he is a criminal or has been charged with criminal offenses. (See *People v. Decker* (1923), 310 Ill. 234, 141 N.E. 710; *People v. Kosearas* (1951), 408 Ill. 179, 96 N.E.2d 539.) (We note in passing that the portion of the *Cassman* opinion which held that only "infamous" crimes may be

properly used for impeachment has subsequently been overruled. (See *People v. Clay* (1977), 45 Ill. App. 3d 145, 359 N.E.2d 482).)

The State's Attorney's questioning of the defendant in this case was plain error and we therefore address the merits of the claim.

■ Proof of prior convictions for impeachment purposes is provable only by the introduction into evidence on rebuttal of the record of conviction or an authenticated copy. (*People v. Kosearas* (1951), 408 Ill. 179, 96 N.E.2d 539; *People v. McCrimmon* (1967), 37 Ill. 2d 40, 224 N.E.2d 822; *People v. Depper* (1994), 256 Ill. App. 3d 179, 629 N.E.2d 699.) The basis for this rule is the prejudice to a defendant who is compelled to testify before a jury as to his prior convictions. (*People v. Bey* (1969), 42 Ill. 2d 139, 246 N.E.2d 287.) While the presentation of a prior conviction by means of cross-examination is improper, reversal is not required unless the error has deprived the defendant of substantial justice or influenced the determination of his guilt. (*People v. Madison* (1974), 56 Ill. 2d 476, 309 N.E.2d 11.) Thus, in the proper case the error may be deemed harmless. See, *e.g., People v. Beltran* (1977), 51 Ill. App. 3d 810, 367 N.E.2d 273.

■ In the instant case, the jury's determination was entirely dependent on the credibility of the witnesses. Officer Thomas Wiley testified he bought cannabis from the defendant on three occasions in February of 1992. He testified he was absolutely certain the defendant was the person he bought drugs from on those dates. The only other officer on the task force to identify the defendant at trial was Officer Thomas Bennett. Bennett testified he saw the defendant get into Wiley's undercover vehicle on February 7, 1992. Bennett testified he was three-quarters of a block away at the time.

There was no physical evidence tying the defendant to the transactions. There was no fingerprint evidence. Nor were any of the official advanced funds recovered in the possession of the defendant. He was not arrested during any of the transactions. In fact, he was not arrested until nearly 10 months after the last alleged transaction. Because of this lengthy interval, the defendant was only able to recall his activities on two of the three days on which the alleged transactions took place. On one of those days, February 26, 1992, five witnesses testified the defendant was in Moline at about the time the alleged transaction was taking place in a cemetery outside New Boston. Though these witnesses were relatives, they were related to the defendant through marriage only. Some of these relatives were very distantly related to the defendant.

The State counters that identification of the accused by a single eyewitness is sufficient to sustain a conviction. (See, *e.g., People v. Richardson* (1988), 123 Ill. 2d 322, 528 N.E.2d 612.) However, the ques-

tion before us is not the sufficiency of the evidence, but whether in light of the evidence presented against the defendant, he was prejudiced by the improper questioning by the State's Attorney.

We also note the timing of the questions. The State's Attorney asked his question near the end of his cross-examination. Defense counsel followed immediately on redirect asking only one question, *i.e.*, was his previous conviction drug-related. The evidence portion of the case concluded. Thus, the last items of evidence heard by the jury involved the defendant's previous conviction. Given the type of evidence in this case, we cannot say the State' Attorney's improper question had no effect on the jury's determination.

The supreme court long ago set forth the proper method for impeaching the credibility of a defendant through use of prior convictions. Here, the record of the defendant's prior conviction was easily obtainable since the conviction had been in the same county. After a thorough review of the evidence in this case, we cannot say the evidence against the defendant is such that the jury could scarcely have arrived at any other verdict absent the improper cross-examination. We cannot say the error was harmless.

For the foregoing reason, the judgment of the circuit court of Mercer County is reversed and the cause remanded for a new trial.

Reversed and remanded.

McCUSKEY and HOLDRIDGE, JJ., concur.