14 July 1999

 No. 3--97--0689

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 1999

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of the 12th Judicial Circuit,

 ) Will County, Illinois

Plaintiff-Appellee, ) 

 )

v. ) No. 95--CF--6904

 ) 

ARTHUR J. FLOWERS, ) Honorable

                                ) Gerald R. Kinney

Defendant-Appellant. ) Judge, Presiding

_________________________________________________________________

JUSTICE HOMER delivered the opinion of the court:

_________________________________________________________________

A jury convicted the defendant, Arthur J. Flowers, of burglary.  720 ILCS 5/19--1(a) (West 1996).  He was sentence to four years imprisonment.  In this appeal, the defendant raises three issues.  First, he argues that the trial judge violated the statute governing replacement of an impaneled juror (725 ILCS 5/115--4(g) (West 1996)).  Second, he argues that the trial judge violated the rule established in 
People v. Montgomery
, 47 Ill. 2d 510, 268 N.E.2d 695 (1971) by: (1) allowing the State to impeach his credibility with evidence that he had a prior misdemeanor theft conviction; and (2) allowing the State to introduce a certified copy of the theft conviction.  Third, he argues that the State failed to prove him guilty beyond a reasonable doubt.  Following our careful review, we affirm.

FACTS

The trial court selected the 12-member jury in panels of four.  Immediately after the initial panel was selected and sworn, one of the panel members (juror Bennett) informed the judge that the jury commissioner had excused her from service on the following day.  The defendant expressed his desire to keep the panel intact and postpone the trial for one day to accommodate juror Bennett’s absence.  The judge, however, offered to either break the panel and select another juror or pick an extra alternate juror.  Rather than choose one of these options, the defendant repeated his desire to keep the panel intact.  The judge then discharged juror Bennett and replaced her with another juror.

Before the trial, the defendant, 
in
 
limine
, moved the court to bar the State from impeaching his credibility with evidence that he had prior convictions for aggravated battery in 1985 and misdemeanor theft in 1993.  Ultimately, the judge barred the State from using the aggravated battery conviction.  However, he allowed the State to use the misdemeanor theft conviction (only for impeachment) and admitted a certified copy of the conviction into evidence.

During the trial, Richard Talarico and Officer Michael Kljaich testified for the State.  The defendant testified on his own behalf.  The relevant testimony was as follows:

Testimony of Richard Talarico

Richard Talarico owns a used car dealership in Joliet.  He also owns a lot directly north of the dealership where he keeps an overflow inventory of cars.  On November 25, 1995, he inspected the north lot at 9 a.m. and observed that the hoods were down on all the cars.  Later that morning (approximately 11 a.m.) he heard some noise while walking to the north lot with a customer.  He peeked around the corner of a building and saw someone on the north lot under the hood of a 1982 Oldsmobile Delta 88.  The person was "wrenching" and removing parts from the car.  His face was not visible, but he was wearing a tan jacket.  The north lot was surrounded by a chain link fence with padlocked gates.  The fence had no holes, and the property was marked with "No Trespassing" signs.

Talarico called the police department and an officer soon arrived.  He unlocked a gate and let the officer onto the north lot.  The officer then apprehended the man in the tan jacket.  The radiator had been removed from the Delta 88 and was lying on the ground near the front fender.  The hood of a 1959 Cadillac was also open.  Talarico knew the radiator came from the Delta 88 because of a familiar leak in the top corner.  He testified that removing a radiator would require a screwdriver, a ratchet or a wrench, and tools to undo or cut some small copper transmission lines.  He identified the defendant as the man the officer apprehended on his north lot.  He did not give the defendant permission to enter his property or take any items from his vehicles.

Testimony of Officer Michael Kljaich

Officer Michael Kljaich responded to Richard Talarico’s call on November 25, 1995.  When he arrived at the dealership, he noticed that the north lot was surrounded by a chain link fence with no apparent holes.  He entered the lot and saw a man in a tan jacket working on the radiator of a 1959 Cadillac.  The man ducked down, but Officer Kljaich apprehended him and asked what he was doing.  He said he was trying to take the radiator from the car.  Officer Kljaich arrested him and performed a pat search--finding a long screwdriver, a pair of wire cutter pliers, and a socket.  Additionally, a pair of gloves and some screwdrivers were sitting on the car and a socket set was lying next to the car.  The upper and lower hoses of the car’s radiator had been disconnected.  Officer Kljaich also inspected a 1982 Oldsmobile Delta 88 and noticed that its radiator was missing.  He found a radiator lying on the ground nearby.  He did not dust the radiator for fingerprints because it was covered with anti-

freeze and he had already seen the defendant trying to remove the radiator from the Cadillac.  He never saw the defendant under the hood of the Delta 88.

Testimony of the Defendant

The defendant went to a flea market near Richard Talarico’s car dealership on November 25, 1995.  While at the flea market, he noticed a friend in the parking lot with a broken-down car.  He looked under the hood and discovered that the car needed a connector piece for the battery.  He then walked to Talarico’s north lot with a man named Clarence Ellis.  They entered the lot by stepping over the fence in a spot where it was lying on the ground.  The defendant thought he found the part his friend needed on a 1963 Cadillac.  Ellis went back to get a wrench and tell the friend they found the part.  A police officer then appeared and asked the defendant what he was doing.  He said he was getting a part from the car.  He acknowledged that he did not own the car and the officer arrested him.

The defendant said he was never under the hood of the Delta 88.  He also said he had never seen the radiator Officer Kljaich found lying on the ground.  He could not provide the address of his friend who had car trouble, stating that the friend had moved to Alabama.  He also could not provide an address or a telephone number for Clarence Ellis, stating that the State had taken Ellis into custody.

The jury found the defendant guilty of burglary.  He subsequently filed a written motion for a new trial.  The judge denied this motion and proceeded with sentencing.

ANALYSIS

I.  Juror Replacement.

The defendant first claims that the trial judge's decision to replace juror Bennett violated subsection 115--4(g) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115--4(g) (West 1996)).  The defendant failed to raise this issue in his motion for a new trial.  Nevertheless, he claims on appeal that the judge’s conduct in replacing juror Bennett constituted plain error.  It is well settled that failure to raise an issue in a written motion for a new trial constitutes a waiver of that issue on appeal.  
People v. Enoch
, 122 Ill. 2d 176, 522 N.E.2d 1124 (1998).  A defendant cannot overcome such a waiver unless he establishes that the trial court committed plain error.
  
People v. Gutierrez
, 239 Ill. App. 3d 536, 543-44, 605 N.E.2d 1110, 1116 (1992).  The plain error doctrine permits a reviewing court to consider a trial error not properly preserved when the evidence is closely balanced, or when the error is so fundamental and of such magnitude that the accused was denied the right to a fair trial.  
People v. Byron
, 164 Ill. 2d 279, 293, 647 N.E.2d 946, 953 (1995).  Because we conclude that the court's decision to replace juror Bennett was not error, we need not engage in a plain error analysis.

 Subsection 115--4(g) of the Code of Criminal Procedure of 1963 reads:

"After the jury is impaneled and sworn the court may direct the selection of 2 alternate jurors who shall take the same oath as the regular jurors. *** If before the final submission of a cause a member of the jury dies or is discharged he shall be replaced by an alternate juror in the order of selection."  725 ILCS 5/115--4(g) (West 1996).

Supreme Court Rule 434(e) (134 Ill. 2d R. 434(e)) contains essentially identical language.  The defendant argues that the judge contravened this language by failing to replace juror Bennett with an alternate juror.  However, the judge replaced juror Bennett 
before
 the complete jury was impaneled and sworn.  Subsection 115--4(g) was consequently inapplicable because it only mandates use of an alternate juror 
after
 the jury (
i.e.
, the complete body of 12 jurors) is impaneled and sworn.

The defendant cites 
People v. Harvey
, 162 Ill. App. 3d 468, 515 N.E.2d 337 (1987), which actually supports our holding.  In 
Harvey
, the court stated that 
"[n]othing in either section 115--

4(g) or Rule 434(e) implies that the period for making replacements by use of alternates begins at any time other than when the jury has been ‘selected and sworn.   That is the time when jeopardy attaches."  
Harvey
, 162 Ill. App. 3d at 472, 515 N.E.2d at 340.  The court supported this pronouncement by citing 
Crist v. Bretz
, 437 U.S. 28, 57 L. Ed. 2d 24, 98 S. Ct. 2156 (1978).
  In 
Crist
, the U.S. Supreme Court clarified the point at which jeopardy attaches by noting "a strong tradition that 
once banded together
 a jury should not be discharged until it had completed its solemn task of announcing a verdict."  (Emphasis added.)  
Crist
, 437 U.S. at 36, 57 L. Ed. 2d at 31-32, 98 S. Ct. at 2161.  Juror Bennett was only the fourth of 12 jurors required to band the jury together.  Accordingly, as noted above, subsection 115--4(g) was not applicable at the time of her replacement and the court did not err by excusing her for cause and replacing her with another juror randomly drawn from the remaining 
venire
.

II.  Impeachment With Evidence of Prior Conviction.

The defendant next claims that the trial judge violated the rule established in 
People v. Montgomery
, 47 Ill. 2d 510, 268 N.E.2d 695 (1971) by: (1) allowing the State to impeach his credibility with evidence that he had a prior misdemeanor theft conviction--since theft is substantially similar to burglary; and (2) allowing the State to introduce a certified copy of the theft conviction.  A trial court's decision to permit a defendant in a criminal case to be impeached by prior conviction will not be disturbed absent an abuse of discretion.  
Montgomery
, 47 Ill. 2d 510, 268 N.E.2d 695.   

A.  Evidence of Misdemeanor Theft Conviction.

The State may attack a defendant’s credibility with evidence that he has been convicted of a crime if the crime: (1) was punishable by death or more than one year of imprisonment, or (2) involved dishonesty or false statement.  
People v. Montgomery
, 47 Ill. 2d 510, 268 N.E.2d 695 (1971).  In either case, however, the evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, or if more than 10 years have passed since the date of the prior conviction or the defendant’s release from confinement, whichever is later.         
Montgomery
, 47 Ill. 2d 510, 268 N.E.2d 695.  Misdemeanor theft is a crime involving dishonesty or false statement.  
People v. Spates
, 77 Ill. 2d 193, 200-04, 395 N.E.2d 563, 566-69 (1979).  A similarity between a prior crime and the charged crime does not require the trial judge to exclude evidence of the prior crime; rather, the similarity is merely a factor for the judge to consider when balancing probative value against unfair prejudice.  
People v. Harris
, 220 Ill. App. 3d 848, 854, 580 N.E.2d 1342, 1346 (1991). 

In the instant case, we cannot say that the trial judge abused his discretion in allowing the State to impeach the defendant’s credibility with evidence of his prior theft conviction.  The record shows that the judge scrutinized both of the defendant’s prior convictions under the 
Montgomery
 rule.  In fact, he barred the State from using the 1985 aggravated battery conviction because he was not satisfied that it met the rule’s 10-year requirement.  On the other hand, he allowed the State to use the 1993 misdemeanor theft conviction.  This conviction satisfied the rule’s dishonesty and time requirements, and the judge concluded that "the probative value of the theft conviction outweighs the prejudice that could result to the jury in knowing the previous conviction."  The court's findings illustrate that the judge understood and applied the balancing test required by 
Montgomery
.  Accordingly, we will not disturb his decision.

B.  Method of Impeachment 

In a related argument, the defendant also argues that the trial judge erred in allowing the jury to review a certified copy of his theft conviction.  He objects to the fact that the procedure utilized in this instance unduly prejudiced him since the jury was informed that his prior crime was theft--which is similar to burglary. 

Relying on 
People v. Atkinson
, 288 Ill. App. 3d 102, 679 N.E.2d 1266 (4
th
 Dist. 1997), 
leave to appeal allowed
, 174 Ill. 2d 570, 686 N.E.2d 1165 (1997), the defendant argues that the court erred by not utilizing the "mere fact" method of impeachment.  Under this method, the trial court informs the jury that the defendant has a prior conviction but withholds information on the nature of his prior crime.

In 
Atkinson
, the trial court permitted a defendant charged with burglary to be impeached with two prior burglary convictions.  The appellate court reversed the defendant's conviction holding that the trial court abused its discretion in allowing the State to give the name of the prior offenses when impeaching the defendant. The court determined that the trial court should have used the "mere-fact" method of impeachment.  
Atkinson
, 288 Ill. 3d at 107, 679 N.E.2d at 1269.  Our supreme court has recently overruled the appellate court in that case.  In rejecting the "mere-fact" method of impeachment, the supreme court noted that the approach creates potential prejudice to a defendant and inhibits the jury's evaluation of a witness' credibility.  
People v. Atkinson
, No. 83426, slip op. at 6-8 (June 17, 1999).

Established Illinois law clearly permits impeachment by prior conviction by the admission of a certified copy of the prior conviction into evidence.  
People v. Nelson
, 275 Ill. App. 3d 877, 656 N.E.2d 1110 (1995); 
People v. Kosearas
, 408 Ill. 179, 96 N.E.2d 539 (1951).  Accordingly, we reject the defendant's contention that the trial court erred when it allowed the State to impeach the defendant by introduction of a certified copy of the defendant's prior theft conviction.

      

III.  Reasonable Doubt.

The defendant finally claims that the State failed to prove him guilty beyond a reasonable doubt.  A person commits burglary when without authority he knowingly enters a motor vehicle, or any part thereof, with intent to commit a theft therein.  720 ILCS 5/19--1(a) (West 1996).  During a criminal trial, the jury’s role is to determine the credibility of witnesses, weigh their testimony, and draw reasonable inferences from the evidence.  
People v. Jimerson
, 127 Ill. 2d 12, 43, 535 N.E.2d 889, 903 (1989).  The proper inquiry on appeal is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the State proved the elements of the crime beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985).  We will not reverse a conviction unless the evidence is so improbable or unsatisfactory that it leaves a reasonable doubt regarding the defendant’s guilt.  
Byron
, 164 Ill. 2d at 299, 647 N.E.2d at 955.  Additionally, we will not substitute our judgment for that of the jury if the evidence is merely conflicting.  
People v. Morales
, 281 Ill. App. 3d 695, 704, 666 N.E.2d 839, 845 (1996).

We find that the State proved the defendant guilty beyond a reasonable doubt.  The State’s indictment read: "said defendant, without authority, knowingly entered a motor vehicle of Richard Talarico, being a 1982 Oldsmobile Delta 88, with the intent to commit a theft therein ***."  Talarico testified that he saw the defendant "wrenching" and removing parts from the Delta 88 before he called Officer Kljaich.  Both Talarico and Officer Kljaich subsequently observed that the radiator had been removed from the Delta 88.  Furthermore, the defendant had the tools necessary to remove a radiator when he was apprehended. 

The defendant asserts that the State offered conflicting evidence regarding which car he was working on when Officer Kljaich apprehended him.  Officer Kljaich testified that the defendant was under the hood of a Cadillac while Talarico believed he was still working on the Delta 88.  However, Talarico qualified his recollection on this point by acknowledging that the events occurred "two years ago."  In any event, he still testified that he saw the defendant removing parts from the Delta 88 
before
 he called the police department.  The defendant also asserts that neither Talarico or Officer Kljaich saw him in possession of the Delta 88's radiator.  This assertion cannot defeat his conviction, since 
proof of burglary does not require proof that the defendant possessed any stolen item.

The jury found the defendant guilty of entering a motor vehicle, or a part thereof, without authorization intending to commit a theft therein, after assessing the credibility of all the witnesses and drawing inferences from the evidence.  We see no reason to disturb the jury’s finding.

CONCLUSION

For the foregoing reasons, we affirm the circuit court’s judgment.

Affirmed.

HOLDRIDGE, P.J., and SLATER, J., concur.