SIXTH DIVISION 

November 15, 2002 

Nos. 1-00-2626, 1-00-4203 consolidated

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee, 

v.

TIMOTHY DIEHL,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Ralph Reyna,

Judge Presiding.

JUSTICE O’MARA FROSSARD delivered the opinion of the court:

Following a jury trial, defendant Timothy Diehl was convicted of burglary and sentenced as a Class X offender to an eight-year prison term.  The judgment was affirmed on direct appeal.  
People v. Diehl
, No. 1-99-1528 (2000) (unpublished order pursuant to Supreme Court Rule 23).  Defendant thereafter filed a 
pro se
 petition to vacate the judgment of conviction and a 
pro se
 petition for post-conviction relief.  In separate orders, the circuit court denied the petition to vacate the judgment and summarily dismissed the post-conviction petition as frivolous and patently without merit.  In this consolidated appeal, defendant contends that his 
pro se
 post-conviction petition presented the gist of two constitutional claims of ineffective assistance of appellate counsel.  Defendant also contends that Public Act 83-942, effective November 23, 1983, violates the single subject clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)).

BACKGROUND

Defendant’s conviction arose from an incident involving the theft of a car battery from a parked vehicle.  At trial, Chicago police officer Timothy Adams testified that around 1 a.m. on August 17, 1998, he and his partner were on routine patrol when they came across defendant walking down the street carrying a car battery.  The officers stopped defendant to ask him questions.  In response to their inquiries, defendant related that he got the battery from his friend “Chris,” pointed in the general direction of where Chris lived, and said he was taking the battery to a car to check its alternator.  According to Officer Adams, defendant then offered to take the officers to Chris’s home so that Chris could confirm defendant’s story.  Defendant got into the police car and directed the officers to the 4100 block of Nelson Street.  There, Officer Adams noticed a parked car with its hood up, so he asked defendant whether he had gotten the battery from that car.  When defendant said that he had, Officer Adams decided to inspect the parked car.  He found that the battery case had been pried open and bent, a bolt was “chewed up,” and the battery was missing.  A pair of pliers was lying in the grass about two feet away.

In response to Officer Adams’ questions, defendant indicated that he had used the pliers to open the battery case.  Officer Adams testified that his partner ran the license plate and learned the car belonged to Zachary Schrantz, who lived nearby.  Officer Adams rang Schrantz’s bell, and when Schrantz answered the door, asked if anyone named Chris lived at the address.  Schrantz told Officer Adams that no one named Chris lived there, stated he had not allowed anyone to remove the battery from his car, and denied knowing defendant.

Officer Adams got back into the squad car and told defendant, “Your story doesn’t look good.”  Defendant then confessed that after Chris opened the car door for him, he popped the hood latch, opened the hood, and took the battery.  Later, after receiving 
Miranda
 warnings at the police station, defendant made a similar statement in which he related he had intended to sell the battery to a friend.  On cross-examination, Officer Adams acknowledged that even though defendant had pointed to a house down the block from where he was walking with the battery, identifying it as Chris’s home, the officers did not make any further attempt to locate Chris.

Zachary Schrantz testified that on August 17, 1998, around 2 a.m. a police officer rang his doorbell.  When Schrantz answered the door, the officer pointed out his car and asked if it was his.  Schrantz inspected the car, noticing that the hood was up, the battery was gone, and the battery casing was bent.  At the officer’s request, Schrantz looked at defendant, who was in the police car, and at the battery, which was in the trunk of the police car.  Schrantz identified the car and battery as his, but stated that he did not know defendant.  Schrantz further testified that he never gave defendant permission or authority to enter his car or remove its battery.

Defendant testified that on the evening of August 16, 1998, he was drinking at a bar with a friend named Dave and a man defendant knew as Chris Morris.  Defendant had met Chris, who was a friend of a friend, on two prior occasions.  Around 12:30 a.m., defendant was approached by Michelle King, a friend of his ex-girlfriend.  King told defendant she was having trouble with her car and asked for a jump.  When defendant told King he did not have a car, Chris said his brother had a car and offered to go ask his brother if he would give King a jump.  Chris left the bar and eventually returned.  Defendant then left the bar with Chris and went to Chris’s apartment building, which was a block from the bar.  Chris went inside the building, came back out with a car battery, and gave the battery to defendant.

Defendant stated that around 1 a.m., he was walking back toward the bar, carrying the battery, when a police car pulled up next to him.  An officer asked where he was going and what he was doing with a car battery.  Defendant told the officer that he got the battery “from a man named Chris” and pointed to Chris’s building, which was about 50 feet away.  He also told the officer about King asking him for a jump and explained to the officer that he was going to use the battery to try to start King’s car.  In response to further questioning from the officer, defendant related that Chris had said the battery was from his brother’s car.  The officer put the battery in the trunk of the police car and led defendant to the backseat.  The officer and his partner then drove defendant around for a few blocks, finally stopping on Nelson Street near a car with its hood up.

Defendant testified that he had not been in Schrantz’s car and had not removed its battery.  Defendant denied having confessed to either act and stated that the police never showed him a pair of pliers.  He further testified that since the night of his arrest, he learned that Chris had been arrested for another burglary charge and was “somewhere” in the Cook County jail.  Finally, defendant stated he had sent a friend to King’s last known address, but the friend had been unable to locate her.

In rebuttal, the State introduced into evidence two certified copies of criminal convictions.  The first reflected that defendant had been convicted of a misdemeanor on February 26, 1998.  The second reflected a misdemeanor conviction on November 7, 1997.

Following deliberations, the jury returned a verdict finding defendant guilty of burglary.  The trial court subsequently sentenced defendant to eight years in prison as a Class X offender.  On May 12, 1999, defendant filed a notice of appeal.

On October 27, 1999, defendant filed a 
pro se
 petition to vacate the judgment of conviction pursuant to section 2-1401 of the Code of Civil Procedure.  735 ILCS 5/2-1401 (West 1998).  The petition included an assertion of the existence of newly discovered evidence.  Defendant stated that on the date of his arrest, he “assumed Mr. Christopher Damnitz to be named Chris Morris.”  Since then, defendant had learned from Damnitz that “Morris” was only a childhood nickname.  Defendant argued:

“The efforts made by the Public Defender’s office in locating him were based on the mistaken assumption that his actual name was ‘Chris Morris.’  This man Chris Damnitz could have testified at my hearing, and I informed the court of this and that I wanted a subpoena sent not only to him but to another witness as well as recalling Off. Adams for the purpose of me confronting him with his inconsistent testimony.  When I requested these 3 subpoenas, I was told by the Court that I would have to get my witnesses on my own.”

The 
pro se
 section 2-1401 petition also presented an argument regarding Michelle King, the witness referenced in the above-quoted paragraph.  Defendant stated that although he gave the public defender’s office King’s address and told them her roommate’s last name may be on the door, their investigator could not locate her.  Defendant argued, “It is clear that even if there was an effort made to locate this witness, it was not very diligent.”  He then summarized, “The bottom line is this: I gave the location of both of these witnesses’ residences to the ineffective Public Defenders, and requested that subpoenas be sent to them.  The Public Defender told me that they would not subpoena anyone until they had a chance to speak to them first.”  Finally, defendant related the substance of Damnitz’s and King’s potential testimony as follows:

“4) The testimony of Christopher Damnitz is evidence that Mr. Timothy Diehl did not commit Burglary on the night of August 16 or 17, 1998 to a vehicle owned by Mr. Zachary Schrantz of 4117 W. Nelson Street.  Mr. Damnitz can corroborate Mr. Diehl’s explanation of having received the battery from Mr. Damnitz that was purported to be the proceeds of a Burglary to the automobile of Mr. Schrantz.

5) The testimony of Michelle King can corroborate the defendant’s explanation of having received the battery from Mr. Damnitz, and that Mr. Diehl remained in the bar with her while Mr. Damnitz left and then returned stating that he had located a battery for her.”

The circuit court denied defendant’s 
pro se
 petition to vacate judgment of conviction on November 8, 1999.

On August 14, 2000, this court affirmed defendant’s conviction and sentence.  See 
People v. Diehl
, No. 1-99-1528 (2000) (unpublished order pursuant to Supreme Court Rule 23).  In so doing, this court rejected defendant’s contention that the trial court had erred in denying his motion to excuse a prospective juror for cause.  Defendant raised no other issues on direct appeal. 

On November 2, 2000, defendant filed a 
pro se
 petition for post-conviction relief.  The petition included an argument that appellate counsel was ineffective for failing to raise several issues on appeal.  Among the issues defendant asserted should have been raised was that the trial court erred in denying defendant’s motion 
in limine
 barring the State from introducing evidence of defendant’s prior convictions.  Defendant argued that the prior convictions were not probative of his credibility and asserted that he was prejudiced by their introduction, as the State’s case was otherwise weak.  The petition also included an argument “that the failure of the Court to direct the Clerk to issue subpoenas for Chris Damnitz, Michelle King, and Gregory Bella when requested in open court by defendant denied defendant his right to compulsory process for obtaining witnesses in his favor as guaranteed by the 6th Amendment to the U.S. Constitution and Article One of the Illinois Constitution.”  Defendant asserted that Michelle King would have testified that defendant was acting as her mechanic, that Damnitz had offered to provide the battery, and that “defendant was merely to install it.”  Defendant failed to provide the content of Damnitz’s potential testimony.

According to the 
pro se
 post-conviction petition, around 9 a.m. on August 19, 1998, defendant called King, who agreed to come to court the next month for a preliminary hearing.  However, no hearing was held on that date.  Defendant asserted in his petition that at a hearing on his motion to quash arrest and suppress evidence on December 21, 1998, he testified that he received the battery from a “friend named Chris” and that he was going to install it into a vehicle for a “girl named Michelle.”  Defendant reportedly testified at that hearing that he pointed out Chris’s apartment building to the police and told the officers where Michelle was waiting for him.  Defendant further reported in his petition that on March 2, 1999, his public defender told him that she had sent an investigator to King’s address and the investigator had left a card on the door.  Defendant stated that he and the public defender asked the trial court for a continuance to locate King, but the trial court refused.  Defendant “later” learned that King had moved to another address.  At some point, defendant wrote to King’s roommate at the first address, and the roommate answered that no one from the public defender’s office had been to the apartment or left a card.  On November 16, 2000, the circuit court summarily dismissed defendant’s 
pro se
 post-conviction petition as frivolous and without merit.

Defendant filed separate notices of appeal from the denial of his 
pro se
 section 2-1401 petition to vacate judgment of conviction and the summary dismissal of his 
pro se
 petition for post-conviction relief.  The matters have been consolidated on appeal.

ANALYSIS

I.  Ineffective Assistance of Appellate Counsel

Defendant contends that his 
pro se
 petition for post-conviction relief raised the gist of a constitutional claim of ineffective assistance of appellate counsel.  Specifically, defendant asserts that appellate counsel was ineffective in (1) failing to challenge the trial court’s ruling allowing evidence of his prior convictions; and (2) failing to challenge the denial of his motion for a new trial based on newly discovered evidence.

The Post-Conviction Hearing Act (Act) provides a procedure by which a defendant may collaterally challenge his conviction or sentence for violations of federal or state constitutional rights.  725 ILCS 5/122-1 
et seq
. (West 1998); 
People v. Tenner
, 175 Ill. 2d 372, 377 (1997).  A petition for post-conviction relief must “clearly set forth the respects in which petitioner’s constitutional rights were violated” and “shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached.”  725 ILCS 5/122-2 (West 1998).

Where the death penalty is not involved, adjudication of a post-conviction petition follows a three-stage process.  
People v. Gaultney
, 174 Ill. 2d 410, 418 (1996).  The instant case was before the circuit court at the first stage of the process.  At this stage, the circuit court is required to review the petition within 90 days of its filing and determine whether it is frivolous or patently without merit.  725 ILCS 5/122-2.1(a)(2) (West 1998).  This review by the circuit court is independent: the Act does not permit any further pleadings from the defendant or any motions, responsive pleadings, or other input from the State at the first stage.  
Gaultney
, 174 Ill. 2d at 418; 
People v. Montgomery
, 327 Ill. App. 3d 180, 183 (2001).  To survive dismissal at this stage, a petition need only present the gist of a constitutional claim.  
People v. Edwards
, 197 Ill. 2d 239, 244 (2001); 
Gaultney
, 174 Ill. 2d at 418.

At the first stage, the circuit court must determine whether the petition alleges a constitutional infirmity which, if proven, would necessitate relief under the Act.  
People v. Coleman
, 183 Ill. 2d 366, 380 (1998); 
Montgomery
, 327 Ill. App. 3d at 183.  The first stage of post-conviction review presents a pleading question.  
Montgomery
, 327 Ill. App. 3d at 183.  All well-pleaded facts that are not positively rebutted by the record are taken as true.  
Coleman
, 183 Ill. 2d at 380-81, 385.  A first-stage dismissal is subject to 
de novo
 review.  
Coleman
, 183 Ill. 2d at 385, 388-89.

During first-stage review, a court may examine the trial record, the court file of the proceeding in which the defendant was convicted, any action taken by an appellate court in such a proceeding, any transcripts of such proceedings, and affidavits or records attached to the petition.  725 ILCS 5/122-2.1(c) (West 1998).  These records should be reviewed in order to determine whether the petition’s well-pleaded facts are positively rebutted by the record.  
Montgomery
, 327 Ill. App. 3d at 184.  Whether the well-pleaded facts are positively rebutted will in turn assist in determining whether the petition is frivolous or patently without merit.  
Montgomery
, 327 Ill. App. 3d at 184.  With these principles in mind, we turn to defendant’s arguments on appeal.

Defendant contends that his 
pro se
 petition stated the gist of two meritorious claims of ineffective assistance of appellate counsel.  Claims of ineffective assistance of appellate counsel are evaluated using the two-prong test of 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); see 
People v. Jackson
, No. 88474, slip op. at 12 (December 20, 2001).  Under 
Strickland
, ineffective assistance is established when it is proven that counsel’s representation fell below an objective standard of reasonableness and that, but for counsel’s deficient performance, the outcome of the proceeding would have been different.  
Strickland
, 466 U.S. at 687, 694, 80 L. Ed. 2d at 693, 698, 104 S. Ct. at 2064, 2068.  Accordingly, to succeed on a claim of ineffective assistance of appellate counsel, a defendant must show that appellate counsel’s failure to raise a particular issue was objectively unreasonable and that prejudice resulted from appellate counsel’s decision.  
Jackson
, slip op. at 12.  Appellate counsel is not required to raise every conceivable issue on appeal and will not be found ineffective for refraining from raising issues that are without merit.  
Jackson
, slip op. at 12.  Finally, if a claim of ineffectiveness can be disposed of on the basis that the defendant did not suffer sufficient prejudice, a court need not consider whether counsel’s performance was deficient.  
Strickland
, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

A.  Evidence of Prior Convictions

Before trial, defense counsel presented a motion 
in limine
 based on 
People v. Montgomery
, 47 Ill. 2d 510 (1971), asking the trial court to preclude the State from using any evidence of defendant’s prior convictions.  In particular, defense counsel sought to bar reference to defendant’s misdemeanor convictions for theft in 1997 and retail theft in 1998.  The State argued that both convictions should be admitted if defendant testified because they were directly relevant to defendant’s veracity.  The trial court determined that the State could introduce evidence that defendant was convicted of two misdemeanors on particular dates, but using the “mere-fact” approach, did not allow reference to the type of crime involved in the previous convictions.  Under the “mere-fact” approach, the jury is not informed of the name of the offense underlying the previous conviction.

At trial, the State followed the trial court’s ruling, challenging defendant’s credibility by introducing into evidence two certified copies of defendant’s criminal convictions.  The first reflected that defendant had been convicted of a misdemeanor on February 26, 1998.  The second reflected a misdemeanor conviction on November 7, 1997.  When published to the jury, the convictions were identified only as misdemeanor convictions.

Defendant contends that appellate counsel was ineffective in failing to challenge the trial court’s ruling allowing evidence of his prior convictions.  He argues that evidence of his prior convictions should have been precluded because the offenses in those cases were similar to the offense charged in the instant case.  Defendant further argues that in admitting the “mere fact” of his convictions, the trial court committed reversible error under 
People v. Cox
, 195 Ill. 2d 378 (2001), and 
People v. Atkinson
, 186 Ill. 2d 450 (1999).  He asserts that the admission of the mere fact of his prior convictions left the jury free to speculate as to his criminal past and made it more likely that the jury would believe Officer Adams and not believe him.  Finally, he asserts that the admission of his prior convictions constitutes reversible error, as the evidence was closely balanced and the convictions thus may have been a material factor in the jury’s decision.

The admission of a prior conviction to impeach the credibility of a witness is governed by the test established in 
Montgomery
, 47 Ill. 2d at 516, 519.  For purposes of attacking credibility, evidence of a prior conviction is admissible if (1) the crime was punishable by death or imprisonment for more than one year, or the crime involved dishonesty or false statement regardless of the punishment; (2) less than 10 years have elapsed since either the conviction or the witness’s release from confinement, whichever is later; and (3) the probative value of the conviction outweighs the danger of unfair prejudice.  
Montgomery
, 47 Ill. 2d at 516, 519.  The third factor requires the trial court to perform a balancing test, taking into consideration factors such as the nature of the prior offense, its recency and similarity to the present charge, the length of the criminal record, and the age and circumstances of the witness.  
Cox
, 195 Ill. 2d at 383; 
Atkinson
, 186 Ill. 2d at 456.  If the trial court determines that the prejudice outweighs the probative value of the evidence of the prior conviction, then the evidence of the prior conviction must be excluded.  
Atkinson
, 186 Ill. 2d at 456.  Whether to admit evidence of a prior conviction is a decision within the trial court’s discretion.  
Atkinson
, 186 Ill. 2d at 456.

The “mere-fact” method of admitting evidence of a prior conviction for impeachment purposes informs the jury only of the mere fact of a witness’s prior conviction.  
Cox
, 195 Ill. 2d at 381; 
Atkinson
, 186 Ill. 2d at 457.  Under this method, the jury is not informed of the nature or circumstances of that conviction or the name of the offense underlying the conviction.  
Cox
, 195 Ill. 2d at 381; 
Atkinson
, 186 Ill. 2d at 457.  Our supreme court has rejected the mere-fact method of impeachment, reasoning that it undermines 
Montgomery
, inhibits the jury’s evaluation of a witness’s credibility by eliminating the jury’s consideration of the nature of the prior crime, and invites possibly prejudicial jury speculation about the nature of the past crime.  
Atkinson
, 186 Ill. 2d at 458-59; see also 
Cox
, 195 Ill. 2d at 386-87.  “[I]t is the nature of a past conviction, not merely the fact of it, that aids the jury in assessing a witness’ credibility.”  
Atkinson
, 186 Ill. 2d at 458.

We note that in 
Cox
, our supreme court rejected the State’s argument that under 
Atkinson
, a trial court had discretion to utilize the mere-fact method of impeachment.  In response to the State’s argument that trial courts, using discretion, could admit in evidence mere-fact impeachment to lessen the prejudicial effect of a defendant’s prior convictions, the 
Cox
 court stated, “In 
Atkinson
, however, we held that ‘trial courts 
should not
 consider the mere-fact method of impeachment.’  (Emphasis added.)  [Citation.]  We find no suggestion in this unequivocal language that a trial court’s discretion encompasses mere-fact impeachment.”  
Cox
, 195 Ill. 2d at 386.

In both 
Cox
 and 
Atkinson
, the prior crimes used for impeachment were felonies.  The same reasons supporting the supreme court’s rejection of mere-fact impeachment for prior felony convictions support the rejection of mere-fact impeachment for prior misdemeanor convictions.  The mere-fact method of impeachment for prior misdemeanor convictions also undermines 
Montgomery
, inhibits evaluation of witness credibility by eliminating the jury’s consideration of the nature of the prior crime, and invites possibly prejudicial jury speculation about the nature of the prior crime.  Therefore, we reject the mere-fact method of impeachment for prior convictions that are misdemeanors.

We recognize that the possibility of resulting prejudice to the defendant from allowing the State to impeach the defendant with his prior misdemeanor convictions is controlled by the judicial balancing test set forth in the third prong of 
Montgomery
.  Under the 
Montgomery
 balancing test, if prejudice to the defendant substantially outweighs the probative value of admitting the prior convictions to impeach the defendant, then the prior convictions must be excluded.  
Atkinson
, 186 Ill. 2d at 459.

Defendant contends that “because the court used the mere[-]fact method of impeachment, the court did not conduct the proper balancing test as required by 
Montgomery
.”  We agree that the 
admission of the “mere fact” of defendant’s prior misdemeanor convictions was error.  However, given the circumstances of this case, we find the error was harmless.

In this case, the trial court instructed the jury that evidence of defendant’s previous convictions could be considered “only as it may affect his believability as a witness and must not be considered by you as evidence of his guilt of the offense with which he is charged.”  Absent a showing to the contrary, we must presume that the jury followed the jury instructions in reaching its verdict.  
People v. Simms
, 192 Ill. 2d 348, 373 (2000).  Accordingly, we do not find that defendant was unfairly prejudiced by the admission of the mere fact of his prior convictions.  See 
People v. Washington
, 127 Ill. App. 3d 365, 384 (1984) (finding that improperly admitted evidence of defendant’s prior misdemeanor convictions was harmless where jury was instructed that such evidence was admitted only on the issue of defendant’s credibility).  See also 
Atkinson
, 186 Ill. 2d at 463 (noting, in course of finding that trial court did not abuse its discretion in admitting prior convictions, the trial court instructed the jury that prior convictions may be considered only for purpose of assessing defendant’s credibility); 
People v. Collins
, 227 Ill. App. 3d 670, 675 (1992) (finding, in prosecution for burglary and theft, that defendant was not unfairly prejudiced by the admission of prior conviction for misdemeanor theft where jury was instructed to consider the evidence only in assessing defendant’s credibility).

Although defendant had several prior felony convictions, none were within the 10-year period delineated in 
Montgomery
, and the State did not attempt to offer them into evidence.  However, both misdemeanor convictions fell within the threshold parameters of 
Montgomery
, as they occurred within the past 10 years and involved dishonesty.  See 
People v. Spates
, 77 Ill. 2d 193, 203-04 (1979) (misdemeanor theft is a crime involving dishonesty which may be used for impeachment purposes).  Crimes involving stealing “press heavily on the probative value side of the scale.”  
Torres v. Irving Press, Inc
., 303 Ill. App. 3d 151, 160 (1999), citing 
People v. Elliot
, 274 Ill. App. 3d 901, 909 (1995).  In this case, defendant’s entire defense consisted of his testimony at trial.  Therefore, defendant’s credibility was a central issue, and his prior convictions were crucial in measuring his credibility.  See 
Atkinson
, 186 Ill. 2d at 461-62; 
People v. Hawkins
, 243 Ill. App. 3d 210, 224 (1993).

Theft is a crime that speaks directly to a person’s truthfulness.  As such, the probative value of defendant’s prior convictions was high.  Defendant’s credibility was a critical issue.  Therefore, the jury should have been allowed to consider his prior convictions in order to accurately assess the weight to be given to his testimony.  We also note that both of defendant’s prior convictions occurred within nine months of the incident leading to the instant conviction.  The proximity in time of the prior offenses to the instant offense is another factor supporting the admission of defendant’s prior convictions.  See 
Collins
, 227 Ill. App. 3d at 675.

Defendant asserts that his prior convictions should have been precluded because they were similar to the offense charged in the instant case.  However, similarity between the prior crimes and the crime charged does not mandate exclusion of the prior convictions.  
Atkinson
, 186 Ill. 2d at 463.  Instead, similarity is merely a factor for the trial court to consider in the course of balancing probative value against unfair prejudice.  
People v. Flowers
, 306 Ill. App. 3d 259, 264 (1999).  Our research has revealed several cases in which the credibility of a defendant on trial for burglary was properly impeached by evidence of a prior conviction for misdemeanor theft.  See, 
e.g.
, 
Flowers
, 306 Ill. App. 3d at 264-65; 
Collins
, 227 Ill. App. 3d at 675.  The similarity between the crime charged, burglary, and the defendant’s prior convictions does not merit preclusion of the prior convictions.

Defendant also asserts that the admission of the “mere fact” of his prior convictions “left the jury free to speculate as to Diehl’s criminal past, and made it more likely that the jury would believe the officer rather than Diehl.”   Given the fact that the prior convictions were for misdemeanors and the offense at issue in this case was a felony, the “mere-fact” admissions were not susceptible to the  same type of jury speculation about the nature of the prior crimes recognized as prejudicial in 
Atkinson 
and 
Cox
.  We believe it more likely that if speculation occurred, the jury would have speculated that defendant had been convicted of offenses that were less serious than the offense of burglary.  Such speculation would be less prejudicial than the type of speculation addressed in 
Atkinson
 and 
Cox
.  Finally, with respect to defendant’s argument that admission of the prior convictions made it more likely that the jury would believe Officer Adams and less likely that the jury would believe him, we note that this is the recognized purpose of prior conviction impeachment under 
Montgomery
: to attack the credibility of a witness with evidence that the witness has been previously convicted of a crime involving dishonesty.  
Montgomery
, 47 Ill. 2d at 516, 519.

A review of the trial record reflects that the probative value of defendant’s convictions substantially outweighed any prejudicial effect.  
Moreover, the trial court’s use of the mere-fact method, although error, was harmless, as the jury was clearly and properly instructed to consider defendant’s previous convictions only in assessing his believability and not as evidence of his guilt of the offense with which he was charged.

We note that in 
Cox
, our supreme court recognized that even if the admission of the redacted prior convictions was error, it was not necessarily reversible error. 
Cox
, 195 Ill. 2d at 387.  In determining whether the admission of defendant’s convictions using the mere-fact approach constitutes reversible error, we must consider whether the error was “a material factor in his conviction such that without the evidence the verdict likely would have been different.”  
People v. Williams
, 161 Ill. 2d 1, 42 (1994).  Our inquiry is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”  (Emphasis omitted.)  
Jackson v. Virginia
, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).  If the outcome would have been the same had the mere-fact impeachment not been admitted, the error was harmless.  
People v. Hernandez
, 319 Ill. App. 3d 520, 528 (2001).

Here, Officer Adams identified defendant as the suspicious person he saw carrying a car battery while walking down the street at 1 a.m.  The officers stopped defendant to ask him questions.  Defendant told Officer Adams and his partner that he had obtained the battery from his friend, Chris.  Defendant offered to take Officer Adams to Chris’s home.  Defendant got into the police car and directed the officers to the 4100 block of Nelson Street.  Officer Adams then observed a car with its hood up parked at the curb in front of 4117 West Nelson Street.  The car’s battery housing had been pried open, the nut and bolt had been “chewed up,” and the battery was missing.  On the grass within two feet of the car was a pair of pliers.   A check of the parked car’s registration indicated that it was not registered to a person named Chris.  When Officer Adams rang the bell at 4117 West Nelson Street, Zachary Schrantz, the owner of the parked car, came to the door.  Schrantz indicated that Chris did not live there and that he had not given anyone permission to take his battery out of his car.

According to Officer Adams, when defendant was confronted with this information, he admitted that after Chris opened the car door for him, he popped the hood latch, opened the hood, and took the battery.  However, at trial, defendant denied having told the officer, either in the squad car or at the station, that he had participated in taking the battery from Schrantz’s car.

Viewed in the light most favorable to the State, a rational jury could have found the essential elements of the crime of burglary had been proved beyond a reasonable doubt.  
Jackson
, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789.  We note that the impeaching convictions were misdemeanors.  Therefore, the jury could not speculate that the impeaching convictions were for offenses more serious than the crime of burglary.  See 
Atkinson
, 186 Ill. 2d at 459.

For the reasons previously discussed, we find it unlikely that the outcome of defendant’s trial would have been different had the mere-fact impeachment not been allowed.  We find that defendant suffered no prejudice from counsel’s failure to raise the issue on appeal.  Defendant failed to demonstrate that he would have prevailed regarding the mere-fact impeachment had that issue been raised on appeal.  Therefore, appellate counsel was not ineffective and summary dismissal of the post-conviction petition was proper.

B.  Newly Discovered Evidence

Defendant contends that his 
pro se
 post-conviction petition raised the gist of a constitutional claim that appellate counsel was ineffective in failing to challenge the denial of his motion for a new trial based on newly discovered evidence.  Defendant asserts that Chris Damnitz and Michelle King were newly discovered since trial, that their testimony would have corroborated his own, and that such testimony probably would have affected the outcome of the trial.  Therefore, he argues, the circuit court erred in denying his motion for a new trial.  Defendant argues that because this issue was not raised on direct appeal, appellate counsel was ineffective, and his post-conviction petition should not have been summarily dismissed.

The Act mandates that a petition for post-conviction relief “shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached.”  725 ILCS 5/122-2 (West 1998).  The failure to either attach the necessary “affidavits, records, or other evidence” or explain their absence is fatal to a post-conviction petition and by itself justifies summary dismissal.  
People v. Collins
, No. 90679, slip op. at 5 (March 15, 2002).  Here, defendant failed to attach necessary affidavits from Damnitz and King to his post-conviction petition and did not explain the absence of such documentation.  Defendant’s own sworn verification is not a substitute for the “affidavits, records, or other evidence” required by the Act.  
Collins
, slip op. at 5.  Moreover, the record did not contain the memorialized testimony of Damnitz or King from any earlier proceeding in connection with this case.  See 
People v. Morris
, No. 1-00-0916, slip op. at 20 (November 8, 2002) (previous trial record contained testimony of alibi witnesses).  Accordingly, the circuit court properly dismissed the petition as frivolous and patently without merit.  See 
Collins
, slip op. at 8.

II.  Section 2-1401 Petition

Defendant filed an appeal from the denial of his 
pro se
 section 2-1401 petition to vacate the judgment of conviction.  That appeal was consolidated with defendant’s appeal from the summary dismissal of his 
pro se
 post-conviction petition.  However, defendant’s brief does not include any arguments regarding the denial of the petition to vacate the judgment.  A court of review is entitled to have the issues on appeal clearly defined in the briefs, with pertinent authority cited and cohesive legal arguments presented.  
People v. Simester
, 287 Ill. App. 3d 420, 428 (1997); 
People v. Humphries
, 257 Ill. App. 3d 1034, 1043 (1994).  The appellate court is not a depository in which an appellant may place the burden of argument and research.  
Simester
, 287 Ill. App. 3d at 428.  We are unable to review claims where the appellant’s brief fails to specify the nature of the alleged error and fails to present arguments that are supported by applicable legal precedent.  
People v. Madej
, 177 Ill. 2d 116, 157-58, 164 (1997).  Defendant has failed to make any arguments or present any legal analysis with respect to the denial of his section 2-1401 petition to vacate the judgment.

Nevertheless, we note that defendant’s 
pro se
 petition to vacate the judgment of conviction referenced section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 1998)) and included an assertion of the existence of newly discovered evidence, referencing Chris Damnitz and Michelle King.  The section 2-1401 petition raised a virtually identical “newly discovered evidence” claim as was raised in the 
pro se
 post-conviction petition.  Had defendant presented this issue to us in his brief, we would have rejected the claim.

The purpose of a section 2-1401 petition is to present errors of fact, unknown to the petitioner or the court at the time of trial, that would have caused the court to render a different decision.  
People v. Mahaffey
, 194 Ill. 2d 154, 181 (2000).  Setting aside a judgment on the basis of newly discovered evidence is justified where the petitioner shows both that the new evidence was unknown to him at the time of trial and that he could not have discovered the new evidence with the exercise of reasonable diligence.  
People v. Waters
, 328 Ill. App. 3d 117, 127 (2002).  In addition, the new evidence must be so conclusive that it would probably change the result on retrial, must be material, and must be more than merely cumulative to the trial evidence.  
Waters
, 328 Ill. App. 3d at 127.  A section 2-1401 petition must be supported by “affidavit or other appropriate showing as to matters not of record.”  735 ILCS 5/2-1401(b) (West 1998).  We will not disturb a trial court’s decision to grant or deny relief pursuant to section 2-1401 absent an abuse of discretion.  
People v. Haynes
, 192 Ill. 2d 437, 461 (2000).

Although defendant asserted in his section 2-1401 petition that he knew the locations of Damnitz and King, he failed to attach affidavits from these purported witness demonstrating their potential testimony.  This failure rendered the section 2-1401 petition fatally deficient, as the only presentation of the witnesses’ potential testimony was defendant’s own self-serving assertions.  Moreover, the record indicates that defendant knew of these witnesses before trial.  We find no abuse of discretion.

III.  Single Subject Challenge

Defendant’s final contention is that Public Act 83-942, effective November 23, 1983, which added the provision for summary dismissal of a post-conviction petition, violated the single subject clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)).  This argument was rejected by our supreme court in 
People v. Boclair
, Nos. 89388, 89471, 89534 cons., slip op. at 13-18 (August 29, 2002).  Public Act 83-942 does not violate the single subject rule.  
Boclair
, slip op. at 18.

CONCLUSION

Defendant’s 
pro se
 petition for post-conviction relief failed to raise the gist of a constitutional claim of ineffective assistance of appellate counsel.  Although the trial court erred in allowing the “mere fact” of defendant’s prior convictions into evidence, the error was harmless and appellate counsel was not ineffective in failing to challenge the trial court’s ruling.  Second, defendant failed to attach to his post-conviction petition necessary “affidavits, records, or other evidence” to support his claim regarding newly discovered evidence and did not state why such documentation was not attached.  Summary dismissal was thus proper.  Third, defendant did not include in his brief arguments regarding the dismissal of his section 2-1401 petition, and even if he had, for the reasons previously discussed, we would have rejected his arguments.  Finally, Public Act 83-942 does not violate the single subject rule.

We affirm the judgment of the circuit court.

Affirmed.

O’BRIEN, P.J., and GALLAGHER, J., concur.