NOTICE

Decision filed 02/27/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 210240-U

NO. 5-21-0240

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Wayne County. |
| | ) | |
| v. | ) | No. 04-CF-5 |
| | ) | |
| KEVIN L. McMANAMAY, | ) | Honorable |
| | ) | Michael J. Molt, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's first-stage dismissal of the defendant's petition for postconviction relief, because the circuit court correctly found that the petition was frivolous and patently without merit where, *inter alia*, the factual alllegations made by the defendant in the petition are clearly rebutted by the record.

¶ 2    The defendant, Kevin L. McManamay, appeals the dismissal, by the circuit court of Wayne County at the first stage of proceedings, of his petition for postconviction relief. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On December 14, 2020, the defendant, acting *pro se*, filed a petition for postconviction relief. Therein, he alleged that, *inter alia*, he entered "a negotiated plea" of guilty, on June 14, 2004, to one count of first degree murder, and that a second count of first degree murder was

1

dismissed. He alleged that his "constitutional rights were violated because a term of [3] years of [mandatory supervised release (MSR) was] added to his sentence," which he alleged "violated the terms of his negotiated plea of 25 years." He thereafter alleged that "he was never advised" of the term of MSR. He alleged that he had a sixth-grade level of education and should have been informed that MSR "existed," rather than being "blindsided" when he later learned that he would "have to serve an additional 3 years of MSR." He reiterated his contention that he was never admonished "on the record, regarding the statutorily required MSR." He alleged that "because no admonishment was given, his plea agreement, as evinced by the record, was that he would receive a sentence of 25 years." In the concluding paragraph of his petition, the defendant asked the circuit court to "modify his sentence to 22 years of imprisonment, and 3 years 'MSR,' " which he contended would "fulfill[ ] the deal" he made with the State.

¶ 5     On January 15, 2021, the trial judge entered an order dismissing the defendant's petition. Therein, the trial judge ruled that the defendant's claim was contradicted by the transcript of the defendant's guilty plea proceedings, which demonstrated that on at least two occasions the defendant was admonished with regard to his term of MSR. He also ruled that, *inter alia*, the petition was untimely. The defendant filed a timely motion to reconsider, which subsequently was denied. This timely appeal was filed, with counsel appointed to assist the defendant on appeal.

¶ 6     Included in the record on appeal filed by counsel is the transcript of the defendant's 2004 guilty plea proceedings. At the outset of those proceedings, the defendant's trial counsel stated that he wished "to state for the record" that although he initially considered filing a motion for a psychological examination of the defendant to determine the defendant's fitness to stand trial, he decided not to because "the defendant anticipates my questions before I get them out of my mouth, which would mean to me that he has full knowledge of how the court system works." He further stated that the defendant (1) knew the roles of defense counsel, the state's attorney, and the judge,

2

(2) understood what a jury trial was, and (3) knew "the possible defenses that might arise," although counsel added that "there's not any that I could see." He continued that "I could not in good faith indicate to the court that I felt there was a *bona fide* doubt as to his fitness." The trial judge—who was a different judge than the one who ruled on his petition more than 15 years later—asked counsel if he believed a psychological examination was needed in this case. Counsel responded that he "certainly did not," and added that he had "come to the distinct conclusion this young man is fit to stand trial and to be sentenced and to enter his plea of guilty today."

¶ 7    Thereafter, the trial judge asked the State what the terms of the guilty plea agreement were. Counsel for the State responded, *inter alia*, that if the trial judge were to "agree to the—to accept this sentence, the sentence would be 25 years in the Illinois Department of Corrections, followed by 3 years of mandatory supervised release." After a factual basis for the murder charge against the defendant was given, the trial judge asked defense counsel if he had "discussed this matter fully with" the defendant. Counsel answered that he had, and stated, "I've not seen anything that would lead me to believe that [the defendant] was anything but rational in his thinking with me, and that he gave rational responses to my questions, and I believe it is a rational decision on his part as far as pleading guilty to a term of 25 years." He added, "I've discussed with him that the range is between 20 and 60 [years], that he would be eligible for the top end or the low end." Counsel stated that he had "further discussed with him that I didn't see that *** there were enough mitigating factors to make it worth the risk to argue *** for second-degree murder at a trial." He noted that he had told the defendant "that there could be sufficient evidence to present as first-degree murder, and in that event he may well get more than the 25 years due to, basically, the seriousness of the injuries to" the victim prior to her death.

¶ 8    The trial judge then admonished the defendant directly, asking him if he understood that probation was not an option, and that the defendant "could receive a term of not less than 20 years

3

and not more than 60 years." The defendant answered, "That's right," immediately after which the trial judge stated, "And 3 years of mandatory supervised release. Do you understand? And fined up to $25,000. Do you understand that?" The defendant answered, "I understand." The trial judge also ensured that the defendant understood that the judge was "not bound to accept the terms of this plea agreement," and that she could "reject those terms and impose different terms." The defendant thereafter insisted that he wished to enter his guilty plea. The trial judge then agreed that she would "accept the plea and waiver of jury, and find[ ] it was knowingly and voluntarily made and with full advice of counsel." She added that she would "impose the agreement, a sentence of 25 years in the Department of Corrections with 3 years mandatory supervised release." She admonished the defendant as to the steps necessary to appeal his sentence, and the plea proceedings were adjourned. Additional facts will be presented as necessary in the remainder of this order.

¶ 9                                     II. ANALYSIS

¶ 10    We review *de novo* the dismissal by a trial judge, at the first stage of proceedings, of a defendant's petition for postconviction relief. See, *e.g.*, *People v. Allen*, 2015 IL 113135, ¶ 19. We may affirm the ruling of the trial judge on any basis supported by the record. See, *e.g.*, *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 418 (2007); see also, *e.g.*, *People v. Johnson*, 208 Ill. 2d 118, 134 (2003). We may do so because the question before us on appeal is the correctness of the result reached by the trial judge, rather than the correctness of the reasoning pursuant to which that result was reached. See, *e.g.*, *Johnson*, 208 Ill. 2d at 128. It is axiomatic that an issue not raised in a postconviction petition in the trial court may not be raised on appeal. See, *e.g.*, *People v. Jones*, 211 Ill. 2d 140, 148 (2004) ("any issues to be reviewed must be presented in the petition filed in the circuit court").

¶ 11    Because most postconviction petitions are drafted by *pro se* defendants without legal training, the threshold for a petition to survive the first stage of review is low. *Allen*, 2015 IL

113135, ¶ 24. However, a petition is properly dismissed at the first stage if the petition has no arguable basis in the law, or in the facts of the case, such as when a petition relies upon a legal theory that is indisputably without merit, or upon a factual allegation that is fanciful. *Id.* ¶ 25. Meritless legal theories include those that are completely contradicted by the facts in the record, and fanciful factual allegations include those that are deemed to be fantastic or delusional. *Id.* When, at the first stage of proceedings, a trial judge evaluates the allegations in a petition, the judge must take the allegations as true and construe them liberally. *Id.* To determine whether the factual allegations in the petition are positively rebutted by the record, the trial judge should review, *inter alia*, the transcripts of the trial or guilty plea proceedings, as well as any other relevant documents in the circuit court file, any action taken by the appellate court in the case, any transcripts of additional relevant proceedings, and any affidavits or records attached to the petition. See, *e.g.*, *People v. Diehl*, 335 Ill. App. 3d 693, 700 (2002).

¶ 12    As the Illinois Supreme Court has held, to satisfy due process requirements, if a defendant enters into a negotiated plea of guilty in exchange for a specific sentence, the trial judge must advise that defendant, before accepting the plea agreement, that a term of MSR will be added to the defendant's prison sentence. *People v. Boykins*, 2017 IL 121365, ¶ 13. The *Boykins* court noted its earlier holdings that the defendant must be told that the MSR term would be " 'added to the actual sentence agreed upon,' " and that " '[a]n admonition that uses the term "MSR" without putting it in some relevant context cannot serve to advise the defendant of the consequences of his guilty plea and cannot aid the defendant in making an informed decision about his case.' " *Id.* ¶ 14 (quoting *People v. Morris*, 236 Ill. 2d 345, 366-67 (2010)). The *Boykins* court recognized that there exists no precise formula for admonishing a defendant as to MSR, that admonishments should be read in a practical and realistic way, and that, ultimately, an admonishment about MSR is sufficient if an ordinary person in the circumstances of the defendant would understand that admonishment

5

to convey the required information. *Id*. ¶ 16. Although the subjective circumstances of the defendant are clearly considered, nevertheless the admonishment is to be "judged by an objective standard." *Id*. ¶ 18. When an ordinary person in the defendant's circumstances would understand the admonishments given in a case, a subsequent claim by the defendant that the defendant did not understand them "is contradicted by the record." *Id*. ¶ 19.

¶ 13    In this case, the defendant's appellate counsel contends that the defendant's petition should have advanced to the second stage of proceedings because "he made an arguable claim that he was unaware he would have to serve his MSR term after his fully-negotiated sentence of 25 years of imprisonment was completed." Counsel contends that the trial judge "never expressly stated that [the defendant] would have to serve his MSR term after he was released from prison," instead using "the words 'and' and 'with' to connect [the defendant's] sentence to MSR." Counsel further posits that in light of the defendant's young age at the time of his plea, and his limited education, "[i]t is arguable that an ordinary person in [the defendant's] circumstances would not understand, under the trial court's admonishments, that his MSR term was required to be served after his fully-negotiated sentence was completed." Thus, counsel maintains, "the record does not rebut [the defendant's] claim that he did not understand he would have to serve an additional 3 years of MSR after he completed his 25-year prison sentence."

¶ 14    The largest problem with counsel's argument is that—counsel's assertions to the contrary notwithstanding—the defendant never claimed in the petition that he was admonished, but did not understand the admonishments he was given. As explained above, in his petition, the defendant claimed—repeatedly—that he was not admonished about MSR at all. Specifically, he alleged that "he was never advised" of the term of MSR, and thereafter reiterated his contention that he was never admonished "on the record, regarding the statutorily required MSR." The defendant further alleged that "because no admonishment was given, his plea agreement, as evinced by the record,

6

was that he would receive a sentence of 25 years." In fact, he went so far as to claim that someone should have told him that MSR "existed," so that he was not "blindsided" when he later learned that he would "have to serve an additional 3 years of MSR"—all of which is clear evidence that his *pro se* claim was that he was never admonished at all, and therefore did not know that MSR even existed, not—as his counsel claims on appeal—that he was admonished but did not understand that his MSR would be served *after* his sentence was complete, rather than concurrently with his sentence.

¶ 15 Although we agree with the defendant's counsel that a *pro se* petition must be construed liberally at the first stage of proceedings (see, *e.g.*, *Allen*, 2015 IL 113135, ¶ 25), we do not believe that liberal construction requires a trial judge to consider not only the facts alleged (in this case, that the defendant was not admonished at all as to MSR, and in fact did not know it even "existed") but also to consider a set of facts that is *exactly opposite* to what the defendant has alleged, which in this case would require the trial judge to construe the petition—its clear factual allegations to the contrary notwithstanding—as putting forward a claim that the defendant *was* admonished as to MSR, and therefore clearly knew that MSR "existed," but failed to understand the admonishments he was given about MSR.

¶ 16 Because the defendant's *pro se* petition did not present the claim that counsel attempts to pursue on appeal (that the defendant was admonished as to MSR but failed to understand those admonishments), and because the claim the petition did present (that the defendant was never admonished about MSR at all) was clearly contradicted by the record, the trial judge did not err in dismissing the defendant's petition at the first stage of proceedings. See *Jones*, 211 Ill. 2d at 148 ("any issues to be reviewed must be presented in the petition filed in the circuit court"); see also *Allen*, 2015 IL 113135, ¶ 25 (petition has no merit where its factual allegations are contradicted by the record).

7

¶ 17    Moreover, even if we were to assume, *arguendo*, that liberal construction of a *pro se* petition requires a trial judge to *sua sponte* entertain an entirely different—and contradictory—set of facts than those alleged in the petition, the defendant's argument on appeal still would fail. As described above, the full context for the MSR admonishments the defendant received at his plea proceedings is as follows: (1) the trial judge asked the State what the terms of the guilty plea agreement were, to which counsel for the State responded that if the trial judge were to "agree to the—to accept this sentence, the sentence would be 25 years in the Illinois Department of Corrections, *followed by* 3 years of mandatory supervised release" (emphasis added); (2) the trial judge thereafter admonished the defendant directly, asking him if he understood that he "could receive a term of not less than 20 years and not more than 60 years," to which the defendant answered, "That's right," and immediately after which the trial judge stated, "And 3 years of mandatory supervised release. Do you understand? And fined up to $25,000. Do you understand that?" The defendant answered, "I understand"; and (3) the trial judge thereafter agreed that she would "accept the plea and waiver of jury, and find[ ] it was knowingly and voluntarily made and with full advice of counsel," and that she would "*impose the agreement*, a sentence of 25 years in the Department of Corrections with 3 years mandatory supervised release" (emphasis added).

¶ 18    When the full context of the defendant's guilty plea proceedings is presented as it actually happened, we do not agree with counsel's contention that in light of the defendant's youthful age and limited education, "[i]t is arguable that an ordinary person in [the defendant's] circumstances would not understand, under the trial court's admonishments, that his MSR term was required to be served after his fully-negotiated sentence was completed." The defendant was first informed, by counsel for the State when announcing the terms of the plea agreement, that his sentence of 25 years would be "followed by" 3 years of MSR; when the trial judge stated the possible penalties the defendant faced, she used the word "and" to refer to the period of MSR; and when she thereafter

8

handed down her sentence, she expressly stated that she would "*impose the agreement*, a sentence of 25 years in the Department of Corrections with 3 years mandatory supervised release." (Emphasis added.) Thus, although on the final occasion she used the word "with" rather than the words "followed by" that were used by counsel for the State when he explained the agreement, she expressly told the defendant that she was imposing the agreement the State had announced: an agreement that, as described to the defendant and the judge by the State, clearly indicated that the sentence was to be "followed by" the term of MSR.

¶ 19 We note that appellate counsel does not contend that the defendant—his youth and limited education notwithstanding—had cognitive impairments that rendered him unfit to enter his plea (and certainly plea counsel harbored no such belief about the defendant, and to the contrary made a record supporting the fact that he believed the defendant was competent and fit to enter his plea), and we simply do not believe that *any* defendant who was in fact fit to enter a guilty plea could have misapprehended what was so clearly stated on the record in this case. Thus, when "judged by an objective standard" (*Boykins*, 2017 IL 121365, ¶ 18), the admonishments the defendant received in this case would clearly apprise a mentally fit and competent person in the circumstances of the defendant that he was agreeing to serve a sentence of 25 years, followed by a term of MSR of 3 additional years. *Id.* ¶ 16. In other words, the admonishments provided the "relevant context" contemplated by the *Boykins* court. *Id.* ¶ 14. Because an ordinary person in the defendant's circumstances would understand the admonishments given in this case, the subsequent claim of the defendant that the defendant did not understand them "is contradicted by the record." *Id*. ¶ 19.

¶ 20 Finally, with regard to both of the reasons why we reject the defendant's claims on appeal, we note that in the concluding paragraph of his *pro se* petition, the defendant asked the circuit court to "modify his sentence to 22 years of imprisonment, and 3 years 'MSR,' " which he contended would "fulfill[ ] the deal" he made with the State for 25 years. The defendant's use of

the word "and" in that paragraph is clearly meant to signify that to fulfill his 25-year deal with the State, he deserved a sentence of 22 years *to be followed by* 3 years of MSR, for there is no other way to read "and" in this context and still get to the allegedly agreed-upon "total" of 25 years. Yet this is the exact usage of "and" about which appellate counsel now complains. The use of it by the *pro se* defendant in his petition is further proof both that he—and any ordinary person in his circumstances—understands its plain meaning in the context of prison sentences and MSR, and that, as analyzed above, the admonished-but-not-understood argument presented by counsel on appeal does not originate from the facts alleged by the defendant in the petition itself, but rather originates from facts appellate counsel believes it would have been more advantageous for the defendant to allege than those he actually did allege. Thus, we note again that because the record clearly contradicts the defendant's assertions on appeal, the trial judge did not err in dismissing the petition at the first stage of proceedings. See, *e.g.*, *Allen*, 2015 IL 113135, ¶ 25 (petition has no merit where its factual allegations are contradicted by the record).

¶ 21                                        III. CONCLUSION

¶ 22    For all of the foregoing reasons, we affirm the first-stage dismissal of the defendant's petition.


¶ 23    Affirmed.